OPINION
{¶ 1} Appellant, Joy E. Longo, and appellee, Charles V. Longo, were married on December 30, 1988. The couple has two children: Alexandra, whose date of birth is March 15, 1994 and Lauren, whose date of birth is June 21, 2000. Both parties are attorneys with active licenses to practice law. Appellee owns and manages a lucrative solo legal practice, Charles V. Longo, Co., LPA, which specializes in personal injury cases. During the majority of the marriage, appellee was the sole source of marital income.[1]
 {¶ 2} Testimony indicated appellee's income between the years 1996 and 2001 ranged from $438,570 up to $1,511,201. The parties lived in a home valued at $625,000, they owned a condominium in Naples, Florida valued at $750,000, and, subsequent to the filing of the divorce action, appellee purchased a condominium in Aurora, Ohio for $260,000. Testimony indicated that the parties spent approximately $70,000 professionally decorating the Florida condo and the marital home.
 {¶ 3} During the marriage the couple enjoyed an above average lifestyle:
 {¶ 4} Appellee had a penchant for purchasing expensive automobiles; further, evidence indicated the couple had between four and six cars at their disposal at any given time and never kept a car longer than eight months. The couple owned several boats during the marriage, belonged to a private yacht club, and dined regularly at lavish restaurants. Appellee had memberships at three country clubs, two athletic clubs, and held season tickets to Cleveland Browns as well as Cleveland Indians games.[2]
Appellant had $32,000 worth of jewelry and both parties had Rolex watches. The parties vacationed in Mexico, St. Thomas, Las Vegas, Toronto, Chicago, and frequently traveled to Florida. When flying, appellant testified the family used a limousine to travel to and from the airport.
 {¶ 5} In September of 2001, prior to filing for divorce, appellee suffered from a heart attack. To maintain his health, appellee's physician indicated appellee should avoid stress. Testimony indicated that, due to his health and his doctor's recommendations, appellee would likely reduce his work load in the future.
 {¶ 6} On September 18, 2001, appellant, filed for divorce in Cuyahoga County. On the same date, appellee, Charles V. Longo, filed for divorce in Geauga County. Appellee, with a court appointed process server, subsequently gained access to the marital home, which he had previously vacated, and served appellant in her presence. The Geauga County trial court determined service was adequate and the case moved forward in the Geauga County Court of Common Pleas.
 {¶ 7} At or about the time the divorce was filed, appellant withdrew $130,000 from a home equity line of credit on the marital home. Appellant also withdrew funds from two additional joint accounts totaling $10,500 and removed $5,000-$6,000 in ATM withdrawals. Although appellant claimed the money was used on attorney fees and household necessities, she also testified to spending "too much" on incidental sundries such as clothes.
 {¶ 8} The case was tried before a magistrate on October 10, 11, and 18, 2002 and January 14, 15, 20, 22, and 23, 2003. The parties were granted until February 23, 2003 to file proposed findings of fact and conclusions of law. On February 21, 2003, appellant filed a motion to reopen the case which was denied. The magistrate's decision was rendered on July 8, 2003. Objections were filed by both parties and the trial court entered its final judgment on December 23, 2003. Appellant now appeals with appellee cross-appealing. Any additional pertinent facts (procedural or otherwise) will be set forth as necessary herein.
 {¶ 9} Appellant appeals and assigns the following errors for our review:
 {¶ 10} "[1.] The trial court erred in determining the parameters and content of the marital estate and the division thereof.
 {¶ 11} "[2.] The trial court erred in capping the temporary child support award at $150,000 without determining the statutory factors allowing for an upward deviation.
 {¶ 12} "[3.] The trial court erred in failing to award child support retroactive to the filing date of the motion, to wit, September 18, 2001.
 {¶ 13} "[4.] The trial court erred providing an insufficient award of spousal support both on temporary orders and permanent orders.
 {¶ 14} "[5.] The trial court erred in failing to make an award of temporary spousal support retroactive to the filing date of the motion, to wit, September 18, 2001.
 {¶ 15} "[6.] The trial court erred in overruling appellant's motion to dismiss appellee's complaint for failure of service of process."
 {¶ 16} Appellant sets forth various issues under her first assignment of error; for ease of discussion, we shall address them out of order.
 {¶ 17} Initially, appellant contends the court erred in its valuation of appellee's law practice. At trial, appellant offered testimony from Robert Greenwald, a business valuator. Mr. Greenwald concluded that appellee's business was worth $537,000. In arriving at this figure, Greenwald testified he used the "net asset value approach * * * [which] takes the sum of the fair market values of the component assets, tangible and intangible, but excluding goodwill, and subtracts the liabilities." In using this formula, Mr. Greenwald added all assets, including future hypothetical earnings and accounts receivable projections based upon appellee's past earnings.
 {¶ 18} On cross-examination, Mr. Greenwald admitted he had no access to any of Charles V. Longo Co.'s open case files and did not check the actual case inventory. Further, Mr. Greenwald never requested information on Charles V. Longo Co.'s caseload or past settlement data; rather than actual figures from past cases, Mr. Greenwald testified he utilized industrial comparisons to arrive at his estimations and admitted that evaluating any file involves anywhere between 0% to 100% speculation.
 {¶ 19} In rebuttal, appellee presented the testimony of Robert Rinallo, a certified evaluation analyst. Mr. Rinallo utilized the essentially the same method as Mr. Greenwald but valued appellee's practice at $24,385. Mr. Rinallo based his determination upon the economic value of the fixed assets without recourse to hypothetical future earnings. Mr. Rinallo testified he did not use any accounts receivable projections because Charles V. Longo, Co.'s earnings were based primarily on contingent fee arrangements and one cannot earn contingent fees until a settlement or verdict has been reached.
 {¶ 20} On cross-examination, appellant's attorney established that, as of appellee's December 31, 2001, Charles V. Longo, Co. had a value of $54,159 which reflected the value of a 2001 GMC Dinali truck purchased by the company. Mr. Rinallo testified he was not aware that Charles V. Longo, Co. purchased the truck as this information was not disclosed by appellee; however, Mr. Rinallo stated that this information would increase his valuation by the fair market value of the vehicle, less any attendant debt associated with the financing and purchase of the vehicle. Such an addition would be roughly similar to the value set forth in the December 31, 2001 tax returns.
 {¶ 21} Judgments supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, syllabus. In this case, the court heard two experts who set forth their methods and conclusions. The great disparity between the two experts' conclusions was a function of Mr. Greenwald's inclusion of hypothetical account's receivable projections. It is primarily the trial court's position to assess the credibility and believability of witness. The trial court weighed the evidence and determined Mr. Rinallo's methods and conclusions were more credible, that the value of appellee's law practice was $24,385. That finding will not be disturbed on appeal.
 {¶ 22} Next, appellant contends that the trial court erred in failing to grant her motion to reopen the case after the close of evidence. The decision whether to grant a motion to reopen a case is within the sound discretion of the trial court. Nozik v. Mentor Lagoons, Inc. (May 6, 1994), 11th Dist. No. 93-L-057, 1994 Ohio App. LEXIS 1957, at 6. The trial court's judgment will not be reversed upon appeal save an abuse of discretion. Id. An abuse of discretion is one in which the decision of the trial court is unreasonable, arbitrary, or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 23} Following the conclusion of evidence, but before the magistrate rendered his decision, the Supreme Court of Ohio amended its rules concerning the right of a sole practitioner to sell a law practice. Appellant contends that the amended rule would have affected the valuation of the law practice. Therefore, appellant believes the lower court abused its discretion in overruling her motion.
 {¶ 24} In her brief, appellant claims she attached a copy of the amended rule; we find no such attachment. However, even if the rule were attached, appellant fails to set forth any meaningful argument regarding how the amended rule would impact the valuation. In essence, appellant maintains that the amendment is ipso facto sufficient to justify a reversal. Without support or justification, appellant's argument must fail. Thus, the trial court did not abuse its discretion when it overruled appellant's motion to reopen.
 {¶ 25} Appellant next contends that the trial court erred when it determined appellant's post-separation spending constituted financial misconduct. Financial misconduct includes the dissipation, concealment, destruction, or fraudulent disposition of assets. R.C. 3105.171(E)(3). A trial court enjoys broad discretion in deciding whether to hold a party liable for financial misconduct. Hvamb v. Mishne, 11th Dist. No. 2002-G-2418, 2003-Ohio-921, ¶ 14.
 {¶ 26} In her brief, appellant fails to offer any justification or argument as to why the court erred. Instead, appellant directs an ad hominem attack at appellee essentially claiming his alleged financial misdeeds were more egregious than anything she did. Appellant's contention does not respond to the issue she raises: The fact that appellee may be "guilty" of an accusation does not prove that appellant is "innocent."
 {¶ 27} The record is clear that appellant, near the time the divorce action was filed, withdrew $130,000 from the couple's home equity line of credit. Appellant also withdrew funds of $5000 and $5500 respectively from two joint accounts at Huntington Bank. Evidence also demonstrated appellant withdrew between $5,000 and $6,000 in ATM transactions and increased credit card debt by nearly $19,000. At trial, appellant testified that $50,000 of the total amount was spent on her attorneys' fees and $3000 was used to pay for appellant's expert. Appellant stated that the remaining money was used to maintain the lifestyle of herself and the couple's children; to wit, household necessities and clothing. In relation to this, appellant testified she could not quantify the amount of money she spent in excess of necessity on clothing; however, on direct examination, appellant stated:
 {¶ 28} "A. I bought too much. * * * I did it part out of anger. Part I did because I was losing weight and needed new sizes. Part of it is Ali was starting school. I know there's a large bill for her school clothes. And part is fall was coming and Lauren needed a lot of clothes.
 {¶ 29} "Q. But some of it was clearly out of anger, I gather?
 {¶ 30} "A. Yes. Yes it was."
 {¶ 31} In its judgment entry, the court concluded:
 {¶ 32} "At about the time the divorce was filed, Mrs. Longo tapped the equity line of credit on the Lakesedge property for $130,000. She withdrew funds from two joint accounts at Huntington for $5,000 on one account, and $5,500 on another account. She also withdrew between $5,000 and $6,000 by ATM withdrawals. She increased one credit card from approximately $5,000 to $24,000. Mrs. Longo testified that she was angry and purchased a lot of clothing. All of this constitutes financial misconduct on Mrs. Longo's part, and it is appropriate that she be held responsible for the equity line of credit on the property."
 {¶ 33} The court's holding was neither arbitrary nor unreasonable and therefore it will not be disturbed.
 {¶ 34} Appellant next complains that the trial court erred when it awarded her attorney fees as part of the division of marital property. It is unclear what Mrs. Longo is seeking by appealing this issue: She notes that she does not object to the award, but merely the manner in which it was ordered. Irrespective of this disconnect, appellant's concerns are misplaced.
 {¶ 35} In its judgment entry, the court stated: "As and for additionalsupport, Mr. Longo shall pay to Mrs. Longo, the sum of Sixty Thousand Dollars ($60,000) toward her attorney fees incurred herein." (emphasis added) R.C. 3105.18 governs awards of spousal support. R.C. 3105.18(H) states: "In divorce or legal separation proceedings, the court may award reasonable attorney fees to either party at any stage of the proceedings * * *." The court specifically awarded the fees as a form of additional spousal support; thus, appellant's contention lacks merit.
 {¶ 36} Next, appellant argues that the Florida real estate, acquired during the marriage and owned jointly with a right of survivorship by appellee and his father, constituted marital property. The record indicates that appellee and his deceased father acquired the real estate during appellant and appellee's marriage. On the title, appellee and his father were named as joint tenants with a right to survivorship. In April of 2001, appellee's father, Charles W. Longo, passed away.
 {¶ 37} Generally, property titled in joint tenancy with a right of survivorship allows the entire tenancy, upon the decease of any of one tenant, to pass to the surviving tenant. See, e.g., United States v.Jacobs (1939), 306 U.S. 363, 370. Consequently, upon Charles W. Longo's death, title to the entire estate passed to appellee.
 {¶ 38} Marital property includes:
 {¶ 39} "All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage * * *." R.C. 3105.171(A)(3)(a)(ii).
 {¶ 40} However, "`marital property' does not include any separate property." R.C. 3105.171(A)(3)(b). Separate property includes:
 {¶ 41} "Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii).
 {¶ 42} A trial court's determination regarding whether property is marital or separate involves a factual analysis of the weight of the evidence. Boyles v. Boyles, 11th Dist. No. 2002-P-0097, 2003 Ohio 5351, ¶ 18. A reviewing court will not reweigh the evidence, but uphold the trial court's determination to the extent it is supported by some competent, credible evidence. Id.
 {¶ 43} The record demonstrates that the property in question was purchased in December, 1998 for $420,000. Appellee testified at trial that he and appellant paid for half of the down payment on the condo while his parents paid the other half. Appellee further testified that he and appellant paid for half of the expenses associated with the condo and his parents paid the other half. Appellee additionally noted that he and appellant took a mortgage on the condo for $240,000. After acquisition, the property was titled to "Charles V. Longo, a married man and Charles W. Longo, a married man, as joint tenants with right of survivorship."
 {¶ 44} In his decision, the magistrate stated:
 {¶ 45} "47. Upon the death of Charles W. Longo, by function of law, title to the property was placed in the sole name of Charles V. Longo.
 {¶ 46} "48. Shirley Longo continued to pay one-half of the mortgage and expenses, after the death of Charles W. Longo, through the present.
 {¶ 47} "49. Plaintiff purchased a one-half interest in the condo during the marriage. Neither plaintiff nor defendant contributed any marital funds to obtain a full interest in the property.
 {¶ 48} "50. The full interest in the Florida condo, in a sense, is a gift to Mr. Longo resulting from the death of his father; in another sense, it is an inheritance resulting from the death of his father; more importantly, it is not equitable that the entire interest in the Florida property be considered a marital asset.
 {¶ 49} "51. The court finds that the marital value of the Florida property is onehalf the agreed upon value."
 {¶ 50} In its judgment entry, the trial court adopted the substance of the foregoing findings.[3]
 {¶ 51} In our view, the trial court abused its discretion in adopting the magistrate's decision regarding the status of the Florida condominium. As indicated above, joint tenancy affords each party to the title equal right to share in the entire property during their respective lives; on the death of one of the joint tenants, the property descends to the survivor. Here, appellee's father died before the marriage ended. Typically, the title to property subject to a joint tenancy would simply descend to the surviving joint tenant, i.e., appellee. However, title does not determine whether property is marital and a trial court is not bound by the form of title in distributing property. See, e.g., Pardeev. Pardee (Sept. 30, 1992), 11th Dist. No. 91-P-2398, 1992 Ohio App. LEXIS 5036, at 4. Under the circumstances, appellee testified the resources used to create the original joint tenancy were marital in nature. Because the property was purchased during the marriage, marital funds were used to create the joint tenancy, and appellee acquired sole ownership to the property during the marriage, the Florida condo, as a whole, is marital property.[4]
 {¶ 52} The magistrate's analysis, which was adopted by the trial court, treats the legal concept of joint tenancy as some hybrid form of a tenancy in common.[5] The magistrate's determination that "it is not equitable that the entire interest in the Florida property be considered a marital asset" suggests that, upon the death of appellee's father, appellee became sole title holder in half of the property while the other half of the property was held equally between appellee and appellant.[6]
Such an interpretation misunderstands the legal distinctions inherent in the concepts of joint tenancy and tenancy in common. When appellee's father passed away, the entire interest in the condo passed to appellee; because appellee's interest in the condo was purchased with marital funds, and appellee became title owner during the marriage, the property is marital property. Appellant's first assignment of error is sustained on this issue.
 {¶ 53} Next, appellant argues that the trial court abused its discretion when it divided the marital property in an unequal and inequitable fashion. The trial court is vested with broad discretion in determining the appropriate breadth of the property awards. Cherry v.Cherry (1981), 66 Ohio St.2d 348, paragraph two of syllabus. While its discretion is not unlimited, the trial court has authority to do what is equitable. Id. "A reviewing court should measure the trial court's adherence to the test, but should not substitute its judgment for that of the trier of fact unless, considering the totality of the circumstances, it finds that the court abused its discretion." Holcomb v. Holcomb
(1989), 44 Ohio St.3d 128, 131.
 {¶ 54} Appellant argues that the trial court unequally distributed the marital property; to wit, in appellant's estimation, the trial court awarded appellee 62% ($551,209) of the marital property while leaving appellant with a mere 38% ($347,834). Appellant's figures are inaccurate.
 {¶ 55} In its judgment entry, the trial court awarded appellee: (a) The Florida condo with an equity of $256,300; (b) automobile, minus the debt: $14,000; (c) the Aurora condo, minus the debt: $160,000; (d) law practice: $24,385; and (e) funds remaining after the down payment on the Aurora condo: $10,000. When added together, appellee was awarded $464,685 in marital property.
 {¶ 56} Appellant was awarded: (1) the marital home, with an equity after the mortgage of $425,000 and (2) her automobile, valued at $36,000. The court further ordered that appellant be awarded $3,685 from other stipulated marital accounts to equalize the distribution of the assets. Added together, appellant received $464,685.
 {¶ 57} The court additionally ordered any remaining accounts:
 {¶ 58} "be divided fifty/fifty, with each party's respective IRA's being included in their fifty percent. In addition, the debt from George Lonjak [$20,000] shall be included in Mr. Longo's one-half. Mr. Longo's one-half shall then be debited Two Thousand two Hundred Dollars ($2,200), which shall be distributed to Mrs. Longo to offset the one-half of the Four Thousand Four Hundred Dollars ($4,400) repayment of loan, which Mr. Longo made inappropriately. As required to effectuate this distribution, part of Mr. Longo's IRA's shall be rolled over to Mrs. Longo's IRA's."
 {¶ 59} The record demonstrates the court distributed the above assets equally and, under the circumstances, equitably. However, because the court erred in determining that only half of the value of the Florida condo was marital property, we shall sustain appellant's argument regarding the distribution of marital property. Specifically, on remand, the court should redistribute the assets in order to effectuate an equitable division of marital property in light of our holding that the entire the Florida condo is marital property.
 {¶ 60} Because we believe the trial court erred in failing to include the entire value of the Florida condominium in its calculation of marital property, appellant's first assignment of error is sustained.
 {¶ 61} In her second assignment of error, appellant contends that the trial court erred when it based appellee's temporary child support computation upon an income level that is far lower than appellee's actual income. We agree.
 {¶ 62} A trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed save a showing of an abuse of discretion. Pauly v. Pauly,80 Ohio St.3d 386, 390, 1997-Ohio-105.
 {¶ 63} In the magistrate's January 18, 2002 decision, which was adopted by the trial court, he determined that the parties gross annual income was $150,000.[7] R.C. 3119.04(B) gives the following guidance for calculating child support under such circumstances:
 {¶ 64} "If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, or the child support enforcement agency, with respect to an administrative child support order, shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings."
 {¶ 65} In his January 18, 2002 decision, the magistrate determined that appellee was obligated to pay appellant $915.46 per child, per monthin temporary child support effective February 1, 2002. This figure was based upon appellee's imputed income of $150,000. On April 19, 2002, appellant objected to both the effective date of the child support and the amount awarded. On June 11, 2002, the court, via judgment entry overruled appellant's objections.
 {¶ 66} In our view, the trial court erred when it computed appellee's temporary child support obligation based upon an imputed income of $150,000. The court had evidence before it indicating that appellee's average annual income was well in excess of the $150,000 mark, e.g., income tax returns from 1998-2000. Neither the magistrate nor the court offered a justification for basing appellee's temporary child support obligation on the $150,000 figure. With this in mind, R.C. 3119.04(B) does not preclude the court from using the $150,000 figure even where a party's income exceeds this amount. However, a court may do so only if it determines using a more accurate reflection of the income "would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee * * *. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings." Id. Here, there is no evidence the court made the requisite findings permitting the use of the $150,000 figure. Thus, the court abused its discretion rendering its award. Appellant's second assignment of error is sustained.
 {¶ 67} In her third assignment of error, appellant contends the trial court erred when it failed to award child support retroactive to the filing date of the divorce, i.e., September 18, 2001.
 {¶ 68} In her brief, appellant contends that the court erred by not awarding child support retroactive to the date of the "motion." However, the record contains no September 18, 2001 motion for child support and, in fact, is bereft of any written motion seeking child support.[8]
Civ.R. 75(N) gives the trial court the ability to award child and spousal support pendente lite where the moving party requests the support "in the complaint, answer, or counterclaim, or by motion served with the pleading, upon satisfactory proof by affidavit duly filed with the clerk of court." As there is no record motion "filed with the clerk of court," we do not see how appellant would be entitled to support retroactive to September 18, 2001.
 {¶ 69} That said, the magistrate determined appellee's support obligations should commence on February 1, 2002, the beginning of the month following his decision. As there was nothing in the record indicating appellant moved the court for child support prior to the December, 2001 hearing, the court did not abuse its discretion when it awarded child support to begin in February, 2002. Appellant's third assignment of error is therefore overruled.
 {¶ 70} In her fourth assignment of error, appellant contends the court erred in awarding insufficient spousal support on both temporary and permanent orders. For the following reasons, we sustain appellant's fourth assigned error, but not necessarily for the reasons she articulates.
 {¶ 71} Generally, an appellate court reviews the award of spousal support using an abuse of discretion standard. Cherry, supra. However, R.C. 3105.18(C)(1) requires the trial court to review certain statutory factors in making its determination of spousal support and indicate the basis for the award in sufficient detail to facilitate adequate review.Stafinsky v. Stafinsky (1996), 116 Ohio App.3d 781, 784.
 {¶ 72} In his January 18, 2002 decision, which was adopted by the trial court, the magistrate awarded appellant temporary spousal support in the amount of $3,670 per month effective February 1, 2002. In its judgment entry, the court did not consider all relevant factors set forth in R.C. 3105.18 and failed to provide a clear basis for the temporary award. Consequently, the trial court's award regarding the temporary spousal support is fundamentally arbitrary.
 {¶ 73} In its December 23, 2003 judgment entry, after properly considering the relevant R.C. 3105.18 factors, the court found appellant was entitled to $7,000 per month in "permanent" spousal support. Notwithstanding its compliance with its statutory mandate, the court did not provide a sufficiently detailed basis for review of this figure; to wit, the court, after considering the various factors listed in R.C.3105.18, did not explain why $7,000 per month would be adequate and reasonable under the circumstances. To ensure adequate review, an appellate court must be privy to how the trial court arrived at its specific monetary figure. Without the benefit of this analysis, the $7,000 per month figure is arbitrary.
 {¶ 74} Because the trial court failed to follow the statutory requirements of R.C. 3105.18, appellant's fourth assignment of error is sustained.
 {¶ 75} In her fifth assignment of error, appellant contends that the trial court erred in failing to award temporary spousal support retroactive to the filing date of the complaint, i.e., September 18, 2001. Similar to appellant's third assignment of error the record contains neither a motion nor any pleadings filed by appellant on September 18, 2001 seeking temporary spousal support. In fact, the record contains no motion seeking such support and therefore runs afoul of Civ.R. 75(N). As there is no record motion "filed with the clerk of court," we do not see how appellant would be entitled to support retroactive to September 18, 2001.
 {¶ 76} As there was nothing in the record indicating appellant moved the court for spousal support prior to the December, 2001 hearing, the court did not abuse its discretion when it awarded spousal support to begin in February, 2002. Appellant's fifth assignment of error is therefore overruled.
 {¶ 77} In her final assignment of error, appellant argues that the trial court erred in overruling her motion to dismiss the complaint for divorce. Appellant maintains that appellee failed to personally serve her and thus the court lacked personal jurisdiction. Here, appellee surreptitiously entered the marital home with a court appointed process server and placed the summons on the kitchen counter. In her brief, appellant admits she was home when this occurred and recognized that appellant had served her.
 {¶ 78} Civ.R. 4.1(B) provides: "Personal Service. * * *
 {¶ 79} "* * * The person serving process shall locate the person to be served and shall tender a copy of the process and accompanying documents to the person to be served. * * *."
 {¶ 80} Under the circumstances, appellant does not deny that she was "tendered" a copy of the process and accompanying documents. Hence, although not a model of procedural etiquette, we do not believe service failed. The trial court did not err in overruling appellant's motion to dismiss. Appellant's sixth assignment of error is therefore overruled.
 {¶ 81} For the above reasons, appellant's first, second, and fourth assignments of error are sustained. Appellant's third, fifth, and sixth assignments of error are overruled. Thus, the judgments pertaining to assignments of error one, two and four are hereby reversed and remanded in accordance with the foregoing opinion.
 {¶ 82} Next, we shall address appellee/cross-appellant's cross appeal.
 {¶ 83} Cross-Appellant asserts the following assignments of error on cross appeal:
 {¶ 84} "[1.] The trial court erred in failing to properly determine the amount of the total child support obligation attributable to Mr. Longo.
 {¶ 85} "[2.] The trial court erred by failing to reserve jurisdiction on the issue of child support.
 {¶ 86} "[3.] The trial court erred in awarding Mrs. Longo attorneys fees after finding that she had engaged in financial misconduct.
 {¶ 87} "[4.] The trial court erred in ordering Mr. Longo to be solely responsible for penalties and interest on the taxes which were a marital debt when his ability to access financial resources was restricted by the court's order and by the financial misconduct of Mrs. Longo."
 {¶ 88} In his first assignment of error, cross-appellant contends the trial court erred in failing to properly determine the total amount of child support attributable to `him. Specifically, cross-appellant contends that the determination of the total child support obligation does not end the determination of child support. Rather, the trial court is obligated to proceed to determine the adjustments and proportion of child support attributable to both parties pursuant to the specific categories set forth in the child support computation worksheet. See, e.g., Murray v. Murray (1999), 128 Ohio App.3d 662, 666.
 {¶ 89} Cross-appellee does not dispute this argument and concedes the trial court must address these issues.
 {¶ 90} That said, neither cross-appellant nor cross-appellee appears to dispute the actual award of permanent child support set forth in the court's December 23, 2003 judgment entry. However, it bears noting that the court ordered cross-appellant to pay a permanent monthly child support obligation of $1,666.67 per child ($40,000.08 per year). This figure was derived from the magistrate's decision, but the magistrate's decision was based upon cross-appellant's imputed annual income of $400,000. Because the court seemingly adopted the magistrate's award of child support without setting forth any discernable method of its own, the award is arbitrary.
 {¶ 91} Further, R.C. 3119.04(B) requires the court to set the child support amount based on the qualitative needs and standard of living of the children and parents. R.C. 3119.04(B); see, also Zeitler v. Zeitler,
9th Dist. No. 04CA008444, 2004-Ohio-5551, at ¶ 8; Cho v. Cho, 7th Dist. No. 03 MA 73, 2003-Ohio-7111, at 8; There is nothing in the court's judgment entry indicating this mandatory consideration was made. Thus, although the court did not abuse its discretion in calculating child support upon an imputed income of $601,388,[9] it did abuse its discretion in ordering cross-appellant to pay $1,666.67 per month to the extent it failed to consider the mandatory requirements of R.C. 3119.04(B) and failed to set forth the method it used in arriving at this amount. On remand, the trial court should take heed of these infirmities.
 {¶ 92} Cross-appellant's first assignment of error is sustained.
 {¶ 93} Cross-appellant's second assignment of error reads:
 {¶ 94} "The trial court erred by failing to reserve jurisdiction on the issue of spousal support." Cross-appellant maintains that had the court considered his health, the fluctuation of his income, the volatility of the market, and cross-appellee's income, its only reasonable course would be to reserve jurisdiction for the possibility of modifying the spousal support award.
 {¶ 95} In paragraph 100 of his July 8, 2003 decision, the magistrate awarded spousal support and concluded that the trial court would not retain jurisdiction to modify the monthly support obligation of cross-appellant. Cross-appellant objected to the award of spousal support but not the failure to retain jurisdiction. As the trial court did not rule on this issue, cross-appellant has waived it on appeal. However, even if crossappellant had properly preserved this issue for review, his argument is meritless.
 {¶ 96} The trial court heard evidence regarding cross-appellant's health, the fluctuation of his income, the volatility of the market for personal injury attorneys due to tort reform, as well as cross-appellee's earning ability. Moreover, the court referenced and consequently considered this evidence in its findings of fact.
 {¶ 97} In light of this, the court stated:
 {¶ 98} "The spousal support shall continue for four (4) years from said date. Spousal support shall terminate upon the death of either party, Mrs. Longo's remarriage, or her cohabitation with an unrelated male in a state equivalent to marriage. The Court shall not retain jurisdiction to modify the spousal support obligation."
 {¶ 99} Although the court did not retain jurisdiction to modify spousal support, it did expressly limit the award in several ways; to wit, cross-appellant's obligation has only a four year lifespan and was structured in a way to terminate upon the death of either party or cross-appellee's connubial cohabitation with an unrelated male. These limitations indicate that the court considered and fairly weighed the factors to which cross-appellant directs our attention. As such, the trial court did not abuse its discretion in failing to retain jurisdiction to modify spousal support
 {¶ 100} Cross-appellant's second assignment of error is overruled.
 {¶ 101} Cross-appellant's third assigned error states:
 {¶ 102} "The trial court erred in awarding Mrs. Longo attorneys fees after finding that she had engaged in financial misconduct." We disagree.
 {¶ 103} As addressed above, under cross-appellee's first assignment of error, the court specifically awarded cross-appellee attorney fees as additional spousal support. R.C. 3105.18, which governs awards of spousal support, permits a court to award reasonable attorney fees to either party at any stage of the proceedings. R.C. 3105.18(H).
 {¶ 104} Initially, cross-appellant's argument implies that a finding of financial misconduct precludes the court from awarding attorney fees as a form of spousal support. However, this general principle must be rejected: The finding that a party engaged in financial misconduct cannot divest the court of its statutory power to award reasonable spousal support.
 {¶ 105} Moreover, the issues of financial misconduct and the award of attorney fees are mutually exclusive. See, R.C. 3105.171(E)(3) and R.C.3105.18(H). A finding of financial misconduct has no necessary relationship to a party's ability to pay litigation expenses or her entitlement to spousal support. Further, notwithstanding the finding of financial misconduct, the trial court found that cross-appellee "would be prevented from fully litigating her rights and protecting her interest if an award of attorney fees is not granted." This determination is not inconsistent with the court's determination that cross-appellee engaged in financial misconduct. Cross-appellant's third assignment of error is overruled.
 {¶ 106} In his final assignment of error, cross-appellant asserts:
 {¶ 107} "The trial court erred in ordering Mr. Longo to be solely responsible for penalties and interest on the taxes which were a marital debt when his ability to access financial resources was restricted by the court's order and by the financial misconduct of Mrs. Longo."
 {¶ 108} Cross-appellant argues he was unable to pay taxes due to restrictions on his ability to access certain funds. Thus, the penalties and interest incurred due to these restrictions should be equitably distributed between the parties.
 {¶ 109} The equitable division of marital property necessarily implies the equitable division of marital debt. R.C. 3105.171(F)(2). As indicated supra, a trial court has discretion to equitably divide marital property. Cherry, supra, 355. We therefore will not disturb the trial court's determination absent an abuse of discretion. Id.
 {¶ 110} The court ordered that general tax liability of the parties was a marital debt to be paid from the assets of the parties. The court heard ample evidence that crossappellant was the sole income provider of the marital household. The court also was aware that, over the six years prior to the filing for divorce, appellant's income ranged from $438,570 to $1,511,201. The court found that cross-appellee is a licensed attorney, but would require some time to obtain job experience in order to obtain appropriate employment. That said, however, the court found: "It would be inappropriate for Mrs. Longo to seek employment outside of the home for several years. The youngest child is approximately three."
 {¶ 111} With the foregoing evidence in mind, we do not think the court abused its discretion when it ordered cross-appellant to pay any interest and penalties due on the marital income tax. We agree that the court's conclusion fails to "equally" divide the specific debt in question. However, equality of distribution, while a goal in many situations, must yield to concerns for equity. Here, the court made an unequal yet equitable division of the debt at issue. Thus, cross-appellant's final assignment of error is without merit.
 {¶ 112} For the above reasons, we overrule cross-appellant's second, third, and fourth assignments of error but sustain cross-appellant's first assignment. The judgment of the Geauga County Court of Common Pleas is therefore reversed and remanded for proceedings consistent with this opinion.
Ford, P.J., Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] Appellant was an employee of Charles V. Longo, Co., LPA, until March 15, 1994 when she became a full time mother to the couple's eldest daughter.
[2] The ticket expenses were passed through appellee's company.
[3] In Paragraph 39 of its judgment entry, the trial court sustained appellant's objection to "finding of fact No. 50" to the extent that it should be categorized as a conclusion of law rather than a finding of fact. However, the judgment entry does not reject the substantive conclusion found in finding of fact no. 50.
[4] Of course, had the divorce occurred before appellee's father died, the result would be significantly different; to wit, appellant would be equitably entitled to an equal division of the marital funds used to purchase the condo, but would not likely retain any future survivorship rights associated with the joint tenancy.
[5] A tenancy in common involves: "a joint interest in property, the only essential element of which is a unity or right of possession. Each tenant in common has a separate and distinct title, and each tenant in common holds this title independently of the other cotenants. Each cotenant's interest can be transferred, devised or encumbered separately and without consent of the other cotenants." Koster v. Baudreaux (1982),11 Ohio App.3d 1, 5.
[6] The mention of appellee's mother's contributions to the condo's mortgage and expenses also indicates that the court credited appellee's mother with an interest in the property. Such a determination is misplaced. The fact that appellee's mother continues to pay half of the mortgage and expenses on the condo has no bearing on the legal effect of the title of the condo in question. Any such payments are legally gratuitous given the status of title.
[7] In its December 23, 2003 judgment entry, which is the basis for the permanent child support order, the trial court accurately found that the gross income of the parties exceeded $150,000. To wit, the court found that "Mr. Long's income fluctuates from $438,570 in 1999 to $1,511,201 in 1996. The Court finds Mr. Long's income should be based on his income for the years 1997, 1998, and 1999. * * * The Court finds Mr. Longo's income for the years 1997, 1998, and 1999 total $1,804,166. or an average of $601,388. Mr. Longo's income for spousal and child support purposes is therefore set at Six Hundred One Thousand Three Hundred Eighty-Eight Dollars ($601,388)."
The Court did not use any of the three highest income years in computing appellee's income; however, evidence was presented that appellee's workload is erratic, the majority of his income in 2000 and 2001 came from one case, and, due to his health, he intends to work less to reduce his stress level. Under the circumstances, the court did not abuse its discretion when it imputed a $601,388 annual income appellee.
[8] In her brief, appellant contends that she filed a motion for support pendente lite when she filed her complaint for divorce in Cuyahoga County. Appellant claims that support motion "transferred" and became a motion pending with the trial court in Geauga County subsequent to the dismissal of the Cuyahoga County complaint. On December 11, 2001, the Geauga County Court of Common Pleas held a hearing on certain motions, including support motions put before the court by appellant. However, there is no evidence in the record that appellant filed any motion(s) for spousal or child support pendente lite with the Geauga County Clerk of Courts.
[9] See footnote 7, supra.