[Cite as *Kirkpatrick v. Kirkpatrick*, 2021-Ohio-4260.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| TERRI KIRKPATRICK, | CASE NO. 2020-T-0078 |
| Plaintiff-Appellee, | |
| - v - | Civil Appeal from the Court of Common Pleas, Domestic Relations Division |
| ALAN KIRKPATRICK, | |
| Defendant-Appellant. | Trial Court No. 2018 DR 00280 |

# **O P I N I O N**

Decided: December 6, 2021
Judgment: Affirmed

*Michael A. Scala*, 244 Seneca Avenue, N.E., P.O. Box 4306, Warren, OH 44482 (For Plaintiff-Appellee).

*Jane Timonere*, Timonere Law Offices, LLC, 4 Lawyers Row, Jefferson, OH 44047 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Alan Kirkpatrick, appeals from the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, distributing property and awarding spousal support in the parties' divorce proceedings. For the following reasons, we affirm the decision of the lower court.

{¶2} On September 20, 2018, plaintiff-appellee, Terri Kirkpatrick, filed a Complaint for Divorce. Alan filed an Answer on October 4, 2018.

{¶3} A Magistrate's Order was issued on November 20, 2018, ordering, inter alia,

that Alan pay Terri's car payment, the house payment, and temporary spousal support in the amount of $400 per month and that Terri shall continue to have access to funds in the health savings account to pay for her prescription medications. The award of temporary spousal support was modified in a March 8, 2019 Magistrate's Order to $750 per month.

{¶4} On July 20-23, 2020, the divorce was tried before the judge. The following testimony and evidence were presented:

{¶5} Alan and Terri were married in 1990 and have five grown children. Alan works as a mechanic and earned approximately $93,000 in the preceding year. Terri had held some jobs during the course of their marriage but had not been recently employed. Alan testified that he was presently living in the marital home and Terri had moved out, with the two separating in August of 2018. According to Alan, he had not made court ordered house payments for about nine months and the house was presently in foreclosure. $142,350.39 was owed on the house through October 1, 2019, which was close to its market value. There was also a lien on the house in Terri's name for $7,927.31.

{¶6} Alan testified that Terri had refinanced a Chevrolet HHR that he drove during the marriage without his knowledge and withdrawn $1,446.31 from his Seven Seventeen Credit Union account in 2017 without his authorization. Alan stated that Terri had converted retirement funds in his GE 401(k) to a lump sum and also took out loans against his current First Energy 401(k) and had forged his name in doing so. He testified that unauthorized withdrawals totaling $11,612 were made from his Fidelity/First Energy account in 2018 and that changes were made to the contact information on that account at various times in 2018 to Terri's information. According to Alan, Terri admitted to taking

2

out the loans from the First Energy account.

{¶7} Alan testified that Terri took money totaling $6,233.59 from his Health Savings Account (HSA) in 2019 and placed it into her personal checking account rather than using it for medical expenses. Pursuant to Alan, Terri had limited medical bills given his health insurance coverage. He further testified that student loans were taken out in his name in an amount totaling $124,386, he had not applied for these loans, and he believed Terri took them and kept the funds while he had been enrolled in courses that were reimbursed by his employer. He opined that he should not have to pay spousal support given the amount of debt and his belief that Terri is capable of working.

{¶8} Terri testified that she managed the finances in the home until August 2018 and they fell behind in their home mortgage from 2015 to 2018 due to her medical bills. She admitted that she made some withdrawals from Alan's 401(k) without his permission during their marriage to cover medical expenses. She testified that she signed his name to documents wherein she made withdrawals from a Fidelity 401(k). She made some withdrawals from the health savings account in 2019 beyond the amount of $300 per month authorized by the court. She also sold Alan's guns to pay attorney's fees during the divorce proceedings. She denied withdrawing any funds from Alan's GE pension or taking out any student loans in Alan's name.

{¶9} Terri testified that she had begun receiving Supplemental Security Income (SSI) in the amount of $125.70 per month and did not have any other income apart from that and spousal support. She is entitled to receive $755 in SSI but it is reduced by the amount of support received. Terri testified regarding various physical and mental health problems she experiences which led to the finding of disability by the Social Security

3

Administration. She used to do secretarial work but the last time she had worked, apart from wreath-making she did at home, was in 2013.

{¶10} Terri testified regarding financial difficulties she experienced after her separation from Alan, including owing back utilities, having a judgment of $4,000 for back rent, facing repossession on her 2015 Cruze, and living with a male individual with whom she variously described as being in a relationship with and as a roommate who aids in paying bills. She testified that she needs about $2,200 to $2,500 per month to meet her expenses.

{¶11} The trial court issued a Judgment Entry on September 15, 2020, granting the parties a divorce on the grounds of incompatibility. The court found that Terri "intentionally dissipated, destroyed and concealed funds from the First Energy savings plan (401k) without consent of Defendant" and that he did not learn of the withdrawals until the divorce was filed. It found that Terri also intentionally dissipated health savings account funds and removed property from the residence, which she admitted to under oath. It found that she fraudulently encumbered Alan with student loan debt. Finally, the court found that through her "marital misconduct of finances, [Terri] caused the asset of real property to be lost," obtained a lien on the parties' Chevrolet HHR, and caused the lien amount to be increased on their Chevrolet Cruze. The court determined that medical bills in excess of $5,000 per year per person were "nonexistent" under the health insurance plan that covered Terri's medical expenses.

{¶12} The court noted that Terri was on SSI, which totaled $10,500 per year and which benefit would decrease upon receipt of spousal support and that Alan earns up to $93,000 per year. It found Terri had minimal ability to work and had numerous health

4

problems. It found that Terri "now exists on approximately $750.00 a month in spousal support and approximately $125.00 per month from SSI" which "is absolutely not sufficient to reside on her own" and that this, in part, was responsible for her "cohabitation" living arrangement, which it did not deem a deterrent to an award of spousal support. It determined that an award of spousal support was warranted but found that in "determining the duration and amount [the court] is also cognizant of the financial misconduct committed by the Plaintiff that has left Defendant in what can only be classified as financial ruin" and ordered Alan to pay $1,600 per month until Terri reaches the age of 62.

{¶13} As to the distribution of property, it awarded the marital residence to Alan, also requiring him to be responsible for the mortgage and lien, finding the residence to have a negative $29,000 in value. It awarded the Cruze to Terri and required her to pay the debt of $12,000. Alan was awarded the HHR and ordered to pay the balance of $3,700. It ordered that Terri "shall be responsible for all of the student loan debt taken in the name of the Defendant as he received no benefit from the same" and "shall hold the Defendant harmless on these debts."

{¶14} Alan timely appeals and raises the following assignments of error:

{¶15} "[1.] The trial court abused its discretion and failed to equitably divide the parties' marital property and debt in accordance with the dictates of Ohio Revised Code §3105.171.

{¶16} "[2.] The trial court abused its discretion and granted the Plaintiff-Appellee spousal support which was neither appropriate nor reasonable under the requirements and factors found in Ohio Revised Code §3105.18."

{¶17} Alan jointly discusses his first and second assignments of error as he

5

alleges the abuse of discretion in the first assignment of error led to the error in the second assignment. In his first assignment of error, Alan argues that the parties' marital property and debt were not divided equitably by the trial court. He emphasizes that Terri's financial misconduct created a burden of $310,700 in debt yet he was still ordered to pay the mortgage on the home and other marital debt. Further, in relation to the second assignment, he argues that the award of spousal support was improper given that Terri's misconduct led to Alan shouldering a financial burden.

{¶18} "A potentially equal division is to be the starting point in determining an equitable distribution of property." (Citation omitted.) *Speece v. Speece*, 2021-Ohio-170, 167 N.E.3d 1, ¶ 20 (11th Dist.); *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981), paragraph one of the syllabus. However, "equality of distribution, while a goal in many situations, must yield to concerns for equity." *Longo v. Longo,* 11th Dist. Geauga No. 2004-G-2556, 2005-Ohio-2069, ¶ 111. In a divorce, "[t]he trial court's role in dividing the property is to evaluate all relevant facts and arrive at an equitable division." (Citation omitted.) *Forcier v. Forcier*, 11th Dist. Geauga No. 2019-G-0192, 2019-Ohio-5052, ¶ 27. "The equitable division of marital property necessarily implies the equitable division of marital debt." *Longo* at ¶ 109, citing R.C. 3105.171(F)(2). A trial court's division of property in a divorce is reviewed under an abuse of discretion standard. *Forcier* at ¶ 27.

{¶19} R.C. 3105.171(E)(4) provides: "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." As

6

with the distribution of property in general, "[a] trial court enjoys broad discretion in deciding whether or not to compensate one spouse for the financial misconduct of the other." *Sedivy v. Sedivy,* 11th Dist. Geauga Nos. 2006-G-2687 and 2006-G-2702, 2007-Ohio-2313, ¶ 89. Furthermore, an award of spousal support is also evaluated under an abuse of discretion standard. *Davis v. Davis*, 11th Dist. Geauga No. 2011-G-3018, 2013-Ohio-211, ¶ 87.

{¶20} Alan first argues that the distribution of property was inequitable as he was burdened with $310,700 in debt and Terri was left with limited liability from the marriage.

{¶21} As an initial matter, we note that a large portion of the aforementioned debt relates to the student loans, the amount of which the trial court determined was $122,388. The court required that Terri be responsible for such debt and hold Alan harmless. Thus, it cannot be construed that this portion of the debt was placed upon Alan. While he contends that the order to hold him harmless could not have been genuinely believed to have a practical effect since Terri was not capable of paying it, this argument would apply equally to any debt that Terri could have been ordered to pay. Speculation about her inability to pay the debt does not alter the fact that she was held solely liable for it by the court.

{¶22} As to the other large portion of debt, the mortgage and lien owed on the house, the court found that, when it was offset against the equity, the marital residence had a negative $29,000 value. This resulted in $29,000 of debt being distributed to Alan. In relation to the vehicles, Terri was left with debt of $12,000 on her vehicle and Alan with $3,900 on his vehicle. There is no question that, overall, when removing the student loan obligation, Alan was left responsible for more debt than Terri, although, in typical

7

circumstances and when taking into account all of the factors, it was not such a great burden that we would find an abuse of discretion as to equity.

{¶23} We recognize, however, that the lower court found, in no uncertain terms, that Terri had committed significant financial misconduct, which resulted in negative equity on various property and in the loss of funds in the HSA and retirement accounts as well as the loss of personal property in an amount in excess of $25,000. We do not disagree with Alan's proposition that he deserved to be granted a monetary award or distribution to account for Terri's financial misconduct. It is evident, however, that the lower court did take action to compensate Alan for such misconduct. The court considered the impact of the financial misconduct on Alan when determining "the duration and amount" of spousal support awarded and emphasized the amount was based on, in part, this misconduct.

{¶24} It has been held that a court can consider financial misconduct in fashioning its award of spousal support, particularly since R.C. 3105.18(C), setting forth the factors to be considered in awarding spousal support, is written broadly and allows the court to consider "[a]ny other factor that the court expressly finds to be relevant and equitable." *Lojek v. Lojek*, 4th Dist. Washington No. 10CA8, 2010-Ohio-5156, ¶ 47-48 (the trial court did not abuse its discretion in considering financial misconduct, in conjunction with other factors, when it "decided how much spousal support to award"); *Kennedy v. Kennedy*, 7th Dist. Columbiana No. 2002 CO 09, 2003-Ohio-495, ¶ 38 (a party's financial misconduct during a marriage can be considered as a reason to "raise or lower support," although not deny it entirely); *Bostik v. Bostik*, 2d Dist. Champaign No. 2013-CA-32, 2014-Ohio-736, ¶ 17. We observe that this court, in *Longo*, 2005-Ohio-2069, noted that a finding that a

8

party engaged in financial misconduct could not divest a trial court from its power to award spousal support. *Id.* at ¶ 102-105. We find this distinguishable from the present matter in that the court there addressed whether financial misconduct precludes an award of attorney's fees and did not consider the issue of whether the court could decrease, not eliminate, spousal support. Since the trial court accounted for the financial misconduct in awarding spousal support, Alan's contentions that he was left with an unfair and inequitable burden from the property division and support award do not persuade this court that an abuse of discretion occurred in the property division and support award in relation to Terri's financial misconduct. It has been held that a trial court did not abuse its discretion in distributing property without considering the parties' income disparity where it considered the disparity in other areas, including in the award of spousal support. *Mavity v. Mavity*, 12th Dist. Butler Nos. CA2000-12-244 and CA2000-12-247, 2002 WL 205422, *6 (Feb. 11, 2002).

{¶25} Further, as this court has noted when considering the validity of a spousal support award, "[w]hile this court may have reached a different conclusion had we been asked to decide the matter in place of the trial court, our function upon review is merely to measure the lower court's adherence to the standards of fairness, not substitute our judgment for that of the trier of fact." *Earnest v. Earnest*, 151 Ohio App.3d 682, 2003-Ohio-704, 785 N.E.2d 766, ¶ 33 (11th Dist.).

{¶26} Alan contends that the trial court did not properly weigh and consider the spousal support factors under R.C. 3105.18(C), arguing that the factors such as the parties' standard of living, retirement benefits, and ability to earn income were impacted by Terri's financial misconduct. The lower court addressed each factor in R.C.

9

3105.18(C), including the income of the parties, their earning abilities, their ages and physical and mental conditions, their retirement benefits, the duration of the marriage, the standard of living, their education, their assets and liabilities, the time and expense of acquiring education or job experience, tax consequences, and any other factors that were relevant or equitable. The court's findings as to the factors were supported by the record, as it accurately stated the limited income Terri had and the facts clearly showed her health problems and disability. The court repeatedly referenced the impact of the finances in relation to spousal support, stating that the retirement funds had been dissipated by Terri and emphasizing the negative equity in assets she caused. Nonetheless, the court fashioned the duration and amount of the award while specifically taking into account the financial misconduct, which balanced Terri's need for an income with the impact of her actions on Alan. The support awarded to Terri, $1,600 a month, for a total of $19,200 per year, until the age of 62, would be less than a quarter of his net income from the prior year. She is placed at a level of income far below what he will make after completing his spousal support payments. As noted above, this would compensate for more than the value of the extra debt for the house and the missing value of property, retirement assets, and the health savings account.

{¶27} Alan also takes issue with the award of spousal support as it would be offset, in part, by Terri's loss of SSI. He emphasizes that the order for him to pay $1,600 a month results in her losing $875 in SSI[1] and would result in a net benefit to her of only $725 per month. This argument, however, takes into account only the impact of this payment on

_____

1. There is some lack of clarity as to the exact amount of SSI to which Terri is entitled, as she testified the amount was $755 but she also testified to receiving $125.70 while receiving $750 in temporary spousal support. Nonetheless, the amount to which she is entitled is not dispositive of this issue.

10

Alan. If the court were to determine that he should not face a spousal support obligation because he should not be forced to make payments that could otherwise be made by Social Security, this would absolve him of the obligation to support his wife of thirty years who spent much of that time as a mother and homemaker and transfer the burden to the government. He cites no authority for such a proposition to be advanced under the law. There is no method of allowing Terri to receive both $875 in SSI payments and the $725 net benefit he references. We do not find this amounts to an abuse of discretion since this is simply how support awards and SSI payments interact under the law. *See* 42 U.S.C. § 1382a; *also Oatley v. Oatley*, 57 Ohio App.2d 226, 228, 387 N.E.2d 245 (6th Dist.1977) ("The supplemental security income payments are intended to supplement other income [including support], not substitute for it. The amount of supplemental security income received is modified as the amount of the recipient's other income changes, not vice versa.").

{¶28} Finally, Alan emphasizes the court's consideration of Terri's cohabitation with another man in order to pay her bills and the court's apparent sympathy for Terri with this situation as evidence that it failed to consider the negative impacts of the property distribution and spousal support on him. However, the trial court considered the issue of cohabitation to address whether it may prevent an award of spousal support. Furthermore, the court ordered that Alan's support obligation to Terri would terminate "immediately upon * * * her cohabitation with a person in a marital relationship" and that it would "review said spousal support in not less than nine (9) months, upon proper motion * * *." The fact that it expressed an opinion that Terri's financial situation was troublesome and that she could not pay bills living on her own merely recognizes factors that the court

11

was fully entitled to consider in weighing all of the circumstances in reaching the disposition of the necessary matters in this case.

{¶29} The first and second assignments of error are without merit.

{¶30} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs to be taxed against appellant.

CYNTHIA WESTCOTT RICE, J., concurs,

MARY JANE TRAPP, P.J., concurs in judgment only in part and dissents in part with a Concurring/Dissenting Opinion.

_____

MARY JANE TRAPP, P.J., concurs in judgment only in part and dissents in part with a Concurring/Dissenting Opinion.

{¶31} I concur with the majority's conclusion that the trial court did not abuse its discretion in its division of the parties' marital property and debt pursuant to R.C. 3105.171, but I respectfully dissent as to the trial court's award of spousal support.

{¶32} The trial court in this case was faced with the difficult task of dividing the encumbered marital assets of a long-term marriage, allocating a substantial load of debt incurred by Ms. Kirkpatrick, who repeatedly engaged in what we euphemistically call "financial misconduct," and determining an amount of spousal support that balances Ms. Kirkpatrick's need for support, which she has, and Mr. Kirkpatrick's ability to pay that support, which is stressed.

12

{¶33} Ohio is an "equitable division" of property state. *See* R.C. 3105.171(B) ("[T]he court shall divide the marital and separate property equitably between the spouses, in accordance with this section"). While the division of marital property is a separate statutory exercise from the consideration of spousal support, it is not totally compartmentalized, nor is the trial court required to make a support decision in a vacuum. Equitable considerations are also a part of the calculus when determining the amount of a spousal support award or whether to make a spousal support award at all.

**Division of Marital Property**

{¶34} I agree with the majority's conclusion that the trial court did not abuse its discretion in its division of the parties' marital property and debt pursuant to R.C. 3105.171. The trial court awarded Mr. Kirkpatrick a greater award of the marital property as a result of Ms. Kirkpatrick's financial misconduct, which R.C. 3105.171(E)(4) authorizes. As this court has recognized, "[w]hen a finding of financial misconduct has been made and there is no separate property, the proper remedy is * * * to compensate the offended spouse with a greater award of marital property." *Dilley v. Dilley*, 11th Dist. Geauga No. 2010-G-2957, 2011-Ohio-2093, ¶ 35.

{¶35} Two of these assets, i.e., the marital residence and the 2010 Chevrolet HHR, were encumbered by significant debt associated with Ms. Kirkpatrick's financial misconduct. However, this does not necessarily mean that the division was inequitable. Generally, when an asset is awarded to one of the spouses in a division of marital property, a debt obligation that encumbers the asset follows the property award. *Morgan v. Morgan*, 2d Dist. Montgomery No. 23371, 2010-Ohio-1685, ¶ 14. Thus, as between

13

the parties to a divorce action, the debt becomes an obligation of the party who is awarded the asset, to the extent that the debt is secured by the asset. *Id.*

{¶36} In addition, it would not have been reasonable for the trial court to award these assets to Mr. Kirkpatrick but then make Ms. Kirkpatrick responsible for the debt. Based on Ms. Kirkpatrick's inability to pay, it would have resulted in the assets being put at even greater risk of loss. There is at least some possibility that Mr. Kirkpatrick, as the greater income producer, could make payments to preserve the asset. Thus, there is a "sound reasoning process that would support the trial court's decision." *AAAA Ents., Inc. v. River Place Community Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶37} As the majority accurately notes, Mr. Kirkpatrick appears to assert that the trial court made him responsible for the student loan debt. A review of the divorce decree demonstrates that the trial court expressly made Ms. Kirkpatrick responsible for the student loan debt and ordered her to hold Mr. Kirkpatrick harmless. While I take no issue with this allocation of responsibility, courts have recognized that "[t]here are occasions where an innocent party may be liable for restitution to a defrauded party," such as when the innocent party was enriched and there was no change of circumstances making restitution inequitable. *Natl. City Bank, Norwalk v. Stang*, 84 Ohio App.3d 764, 767, 618 N.E.2d 241 (6th Dist.1992). Mr. Kirkpatrick will be sued; he is collectable; and he can ill-afford the cost of the defense that will be required to prove that that he did not benefit in any way from the student loan funds. Despite the allocation of responsibility to Ms. Kirkpatrick, Mr. Kirkpatrick retains a substantial risk of liability.

14

**{¶38}** In any event, Mr. Kirkpatrick does not propose an alternative division of the marital property and debt that would be more equitable. Therefore, I concur in judgment only as to the division of marital property.

### Spousal Support

**{¶39}** I would find that the trial court abused its discretion in awarding spousal support pursuant to R.C. 3105.18.

**{¶40}** R.C. 3105.18(B) provides that "[i]n divorce and legal separation proceedings, upon the request of either party and *after the court determines the division or disbursement of property under section 3105.171 of the Revised Code*, the court of common pleas may award reasonable spousal support to either party." (Emphasis added.) R.C. 3105.18(C)(1) lists several factors that a trial court must consider "[i]n determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support * * *." One such factor is set forth in R.C. 3105.18(C)(1)(i), which requires the trial court to consider "[t]he relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties[.]"

**{¶41}** Courts have recognized that "[t]he issue is not just whether it would be reasonable and appropriate for the one seeking support to receive it but also whether it would be reasonable and appropriate for the other party to have to pay it." *White v. White*, 7th Dist. Columbiana No. 02-CO-74, 2003-Ohio-3279, ¶ 32. Thus, a party's ability to pay spousal support is also an important consideration. *Stokes v. Stokes*, 2d Dist. Champaign No. 2020-CA-12, 2021-Ohio-328, ¶ 17 ("[V]irtually all of the considerations in R.C. 3105.18(C) relate in some way to the obligee's need and the obligor's ability to pay");

15

Case No. 2020-T-0078

*Christ v. Christ*, 7th Dist. Noble No. 20 NO 0472, 2021-Ohio-2016, ¶ 72 ("An award of spousal support should not exceed the obligor's ability to pay * * *").

{¶42} Further, when awarding spousal support, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 97, 518 N.E.2d 1197 (1988); *Kondik v. Kondik*, 11th Dist. Portage No. 2008-P-0042, 2009-Ohio-2300, ¶ 93.

{¶43} Although the trial court expressly recited the statutory factors, it failed to explain how they related to "whether spousal support is appropriate and reasonable" under R.C. 2105.018(C)(1). In fact, the divorce decree demonstrates that the trial court purported to consider the statutory factors *before* it determined the division of martial property, not *after*, as R.C. 3105.18(B) expressly requires.

{¶44} With respect to the statutory factor in R.C. 3105.18(C)(1)(i), the trial court found that "[t]he parties have a home that has negative equity and some motor vehicles and personal items previously discussed." This finding relates solely to marital assets, not the parties' "relative assets." Other than its reference to "negative equity," this finding does not address liabilities, much less the significant liabilities created by Ms. Kirkpatrick's financial misconduct – critically, student loan debt in the amount the $122,388 apparently obtained through forged documents - or the significant marital debt that the trial court allocated to Mr. Kirkpatrick.

{¶45} The trial court did describe the parties' "debts and obligations" in a different portion of the divorce decree, where it referenced Mr. Kirkpatrick's Chapter 13 bankruptcy

16

petition. However, it did not acknowledge Mr. Kirkpatrick's testimony that his bankruptcy case was dismissed because he could not afford the payments.

{¶46} The trial court also noted "the *insurmountable* amount of debt in [Mr. Kirkpatrick's] name" and "the financial misconduct committed by [Ms. Kirkpatrick] that has left [Mr. Kirkpatrick] in what can only be classified as financial ruin * * *." However, the trial court did not reconcile these findings with its subsequent determinations that "the facts of this case merit a Spousal Support Order" and that "Spousal Support is appropriate and reasonable." Rather, the trial court stated that it considered Ms. Kirkpatrick's financial misconduct in determining the "duration and amount" of the spousal support award. Notably, the trial court did not explain its rationale for increasing the amount of spousal support from $750 to $1,600 per month.

{¶47} Accordingly, I would find that the trial court abused its discretion in awarding spousal support and remand for the trial court to consider whether spousal support is appropriate and reasonable in light of the significant liabilities created by Ms. Kirkpatrick's financial misconduct, including the student loan debt in Mr. Kirkpatrick's name, and in light of the trial court's allocation of significant marital debt to Mr. Kirkpatrick.

Case No. 2020-T-0078