OPINION *Page 2 
{¶ 1} On June 23, 1984, appellant, Stephen Ebner, and appellee, Nancy Ebner, were married. On May 25, 2006, appellee filed a complaint for divorce.
 {¶ 2} On February 15, 2007, appellee filed a motion for contempt, claiming appellant failed to pay temporary support, one-half of the outstanding real estate tax bill, and one-half of the business evaluation fee. On June 1, 2007, appellee filed an amended motion for contempt, claiming appellant failed to file his corporate tax returns, and failed to provide all bank records needed to complete the business evaluation. A hearing was held on June 11, 2007. By judgment entry filed same date, the trial court found appellant in contempt, fined him $250, and sentenced him to thirty days in jail. The jail sentence was suspended on June 15, 2007, after appellant posted a bond.
 {¶ 3} Final divorce hearings were held on April 18, May 14, June 11, and July 27, 2007. By decision filed August 15, 2007, the magistrate recommended a divorce, allocated marital property, and set spousal support at $1,000 per month for eight years. The magistrate also recommended that appellant pay $2,500 for partial attorney fees and $5,625 for the business evaluation related to the contempt charge, for appellant's failure to produce the bank and business records necessary to complete the business evaluation. The magistrate also recommended that appellant pay $2,000 in attorney fees to appellee. Appellant filed objections.
 {¶ 4} On October 9, 2007, the trial court imposed the remaining days of the contempt sentence for appellant's failure to file the requested bank and business records in a timely manner. *Page 3 
 {¶ 5} On November 2, 2007, the trial court approved and adopted the magistrate's decision with modifications: appellee was to refinance the real estate, and spousal support was increased to $2,500.
 {¶ 6} Appellant filed an appeal on the contempt action (Case No. 2007CA00318), and the divorce action (Case No. 2007DR00346). These matters are now before this court for consideration. Assignments of error are as follows:
 I {¶ 7} "IT WAS ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO ACCEPT A VALUE FOR S P EBNER HEATING AND AIR CONDITIONING D/B/A EBNER HEATING IN THE AMOUNT OF $75,000 AS IT IS CONTRARY TO THE TOTAL WEIGHT OF EVIDENCE."
 II {¶ 8} "IT WAS AN ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO DISTRIBUTE THE MARITAL PROPERTY IN A WAY THAT WAS NOT EQUITABLE AND WAS UNEQUAL."
 III {¶ 9} "IT WAS ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO AWARD APPELLEE SPOUSAL SUPPORT IN THE AMOUNT OF $2,500 PER MONTH BASED UPON THE UNEQUAL DIVISION OF ASSETS AND OTHER FACTORS AS CONTAINED IN O.R.C. SECTION 3105.18."
 IV {¶ 10} "IT WAS ERROR AND AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO IMPOSE THE TWENTY-SIX DAYS REMAINING ON THE CONTEMPT *Page 4 
SENTENCE, WITHOUT PROVIDING PURGE TERMS; ORDERING APPELLANT TO PAY $2,500.00 IN ATTORNEY FEES, $5625.00 FOR THE BUSINESS EVALUATION AND ADDITIONAL ATTORNEY FEES IN THE AMOUNT OF $2000.00."
 I {¶ 11} Appellant claims the trial court erred in determining the value of the business, S. P. Ebner Heating and Air Conditioning, Inc., was $75,000. We disagree.
 {¶ 12} This court will not disturb a trial court's decision absent a showing of an abuse of discretion. Martin v. Martin (1985),18 Ohio St.3d 292. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. In addition, a judgment supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279.
 {¶ 13} The specific finding as it relates to this assignment of error is paragraph 7(B) of Plaintiff's Proposed Findings of Fact and Conclusions of Law filed August 10, 2007 (adopted by the magistrate in its August 15, 2007 decision):
 {¶ 14} "7. The parties have the following marital assets:
 {¶ 15} "B. The Defendant/Husband's heating and air conditioning business is a martial (sic) asset. The business was professionally evaluated by Frank J. Monaco of the Four Fifteen Group to have a Fair Market Value of $75,000.00 as of December 31, 2006. The evaluation was hampered and delayed due to Defendant/Husband's not filing his corporate tax returns for the past six (6) years and not turning over the required business documents in a timely manner. As of the final day of trial, the 415 Group still *Page 5 
had a list of documents they were requesting but had never received from Defendant/Husband."
 {¶ 16} The evaluator, Frank Monaco, acknowledged there were vast discrepancies in the corporate ledger sheet however, he still opined the value of the business was $75,000:
 {¶ 17} "Q. Could you tell us um since you're missing documents still how did you go about then determining a valuation for SP Ebner Heating and Air Conditioning Inc?
 {¶ 18} "A. Ah yes. What I did was this . . If you. . . .if we turn I can walk you right through the report. The first page of the report talks about our summary and says that I valued the corporation at $75,000.00. And then what we do is we look at what was the purpose of the report. And the purpose of the report is to come up with what we believe is the fair market value of this corporation on a majority controlling basis of a privately held interest. And then we look at the economic conditions not only locally . . . we look at them for the whole US and then we look specifically at the industry. And if you would go to page um 14 of my report you'll see a table Your Honor and that . . . this is where we were talking a little bit early about in regards to ah the information obtained from First Research and again First Research is where we pay for this research and they . . . they analyze specific industries throughout the United States and they basically have come back and this is when you see the equity divided by net sales . .they're saying the medium value of corporations the reported selling price is 30 percent of the revenue of the corporation. Okay.
 {¶ 19} "Q. Now you would use these tables not only obviously in divorce litigation but if I was going to be purchasing a company such as Ebner Heating? *Page 6 
 {¶ 20} "A. That's correct.
 {¶ 21} "* * *
 {¶ 22} "Q. So there are unknown factors that could impact the value of the business as you valued it now such as judgments that are attached to the goodwill name or the type of assets they are?
 {¶ 23} "* * *
 {¶ 24} "A. I could answer the question. I believe that my valuation report of $75,000.00 is accurate and as I mentioned earlier um in my testimony on the cross is that if someone did have a judgment against the business if someone did have a judgment against the owner of the business that attached to those assets I would still say that the fair market value of this business someone could potentially come in and pay $75,000.00 for it based on the reasons that I stated above. As long as I can get free and clear title of those assets. And those assets you're asking Frank lets go back in your valuation report the number one thing that you look at is the value of the assets. And I'm saying when I look at the value of the assets I've got $35,000.00 between cash receivables and inventory okay based on the tax return. I got $130,000.00 in the cost of the equipment. Therefore I think it's reasonable to assume that there is another $40,000.00 in value there. Now I haven't got those appraised but if that $40,000.00 plus the thirty-five I'm going to buy those assets for $75,000.00 I'm still going to pay it . . . I'm going to make sure that it's free and clear. It's his problem what happens to that debt. So I don't think that it would impact the $75,000.00 valuation." July 27, 2007 T. at 9-10 and 34-35, respectively. *Page 7 
 {¶ 25} Mr. Monaco acknowledged the difficulty in using standard valuation methodology without the benefit of reliable financial data. Id. at 10-11. Therefore, in assessing the valuation, he considered the goodwill of the company continuously in business since 1947, the purchase of 50% of the company for less than the majority interest by appellant from his brother ($15,000), thirty percent of the sales of the company, and the market value of similar companies. Id. at 12-15.
 {¶ 26} No other expert testimony on valuation was presented. Appellant testified to a litany of outstanding company debts, and of not taking a salary in order to maintain payroll for his employees. May 14, 2007 T. at 113, 117-119. Instead, appellant pays his personal expenses through the company in lieu of taking a paycheck. Id. at 115.
 {¶ 27} Although Mr. Monaco admitted to the difficulty in assessing the value of the company, he did present the only approach to valuation.
 {¶ 28} Upon review, we find sufficient credible evidence to support the valuation of $75,000.00.
 {¶ 29} Assignment of Error I is denied.
 II, III {¶ 30} Appellant claims the trial court erred in permitting an unequal distribution of marital property. In addition, appellant claims the trial court erred in increasing spousal support from $1,000 to $2,500 a month. Because our resolution of these issues is interrelated, we will address them collectively.
 {¶ 31} The trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case.Cherry v. Cherry (1981), 66 Ohio St.2d 348. We cannot substitute our judgment for that of the trial court unless, *Page 8 
when considering the totality of the circumstances, the trial court abused its discretion. Holcomb. v. Holcomb (1989), 44 Ohio St.3d 128;Blakemore.
 {¶ 32} R.C. 3105.171 governs division of marital property. Subsection (F) states the following:
 {¶ 33} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 34} "(1) The duration of the marriage;
 {¶ 35} "(2) The assets and liabilities of the spouses;
 {¶ 36} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 37} "(4) The liquidity of the property to be distributed;
 {¶ 38} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 39} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 40} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 41} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 42} "(9) Any other factor that the court expressly finds to be relevant and equitable." *Page 9 
 {¶ 43} We note subsection (E)(3) states the following:
 {¶ 44} "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
 {¶ 45} The trial court awarded to appellee the marital residence along with the debt (market value of $141,500 minus 32,602.68 of debt equals $108,897.32), three vehicles, two of which are used by the parties two children ($3,353.63, $3,310.00, and $2,920.00), her pension ($17,901.50), and her credit card debt ($443.73). Appellant was awarded the business along with the debt ($75,000.00), a truck ($6,725.00), credit card debt ($693.54), and one-half of the delinquent real estate property tax bill ($1,892.33).
 {¶ 46} Appellant argues that the trial court failed to account for over $110,000 in debt from the business. As discussed supra, there was little back-up for the claimed debts of the company, and problems with reconciling the ledger with the bank accounts.
 {¶ 47} The trial court's November 2, 2007 judgment entry did not specifically address the apparent disparity in the distribution of marital property. However, in its October 23, 2007 judgment entry on objections, the trial court attributed financial misconduct to appellant in its decision on spousal support:
 {¶ 48} "The court finds that more than $210,000 `disappeared' from the corporation during the pendency of this case. This financial misconduct of the defendant has prejudiced the plaintiff to an incalculable extent. The defendant has continued his obstreperous course of conduct during this case including delay, *Page 10 
obfuscation and outright defiance of court orders. The court finds that the magistrate erred in his calculation of spousal support by failing to completely account for this financial misconduct."
 {¶ 49} The trial court assigned financial misconduct to appellant via an increase in spousal support (from $1,000 per month to $2,500 per month). See, e.g., Tyree v. Tyree, Licking App. No. 03 CA 89,2004-Ohio-3967. While this court agrees there is ample evidence peppered throughout the record of financial misconduct that could properly be assigned to appellant, such a determination of financial misconduct should have been addressed and/or assigned when determining the issue of unequal distribution of marital assets, not spousal support as the trial court did sub judice.
 {¶ 50} According, we remand the matter to the trial court to review the unequal distribution of marital assets and the companion issue of spousal support. It was error to assign financial misconduct to spousal support.
 {¶ 51} Assignments of Error II and III are granted.
 IV {¶ 52} Appellant claims the trial court erred in re-imposing the remaining jail sentence on the contempt finding, and ordering appellant to pay $4,500 in attorney fees and $5,625 for the business evaluation. We disagree.
 {¶ 53} Contempt sentences and the award of attorney fees are within the sound discretion of the trial court. Weiland v. IndustrialCommission (1956), 166 Ohio St. 62; Swanson v. Swanson (1976),48 Ohio App.2d 85; Blakemore.
 {¶ 54} In its judgment entry filed October 9, 2007, the trial court re-imposed the previously suspended jail sentence, finding the following: *Page 11 
 {¶ 55} "Findings of Fact:
 {¶ 56} "* * *
 {¶ 57} "The defendant previously served 4 days of the 30 days and was released on the condition that he fully comply/cooperate with discovery. He did not do that and came up with additional records only after the 3rd day of trial and a few days prior to the 4th day.
 {¶ 58} "Order:
 {¶ 59} "The remaining 26 days are imposed and he shall report to the Stark County Jail on December 1, 2007
9am and he shall be released on December 26, 2007 at 6pm."
 {¶ 60} The June 1, 2007 amended motion and accompanying affidavit for contempt was based upon appellant's failure to provide the necessary business and bank records needed for the business evaluation. By judgment entry filed June 11, 2007, the trial court found appellant "failed throughout this case to comply with this court's orders regarding discovery regarding corporation documents and tax returns and has failed to timely pay the sum ordered for plaintiff's business evaluator, child support, taxes, etc. . . .He has not timely filed tax returns for 6+ years." The trial court then ordered the following:
 {¶ 61} "Defendant is GUILTY of WILLFUL CONTEMPT (1st offense) and sentence will be pronounced at the conclusion of today's final day of trial which is ongoing before Magistrate Menicos. At the conclusion of the trial, the Magistrate shall order the defendant into custody to be brought before this court for sentencing." *Page 12 
 {¶ 62} In its decision filed August 15, 2007, the magistrate recommended the following on the issue of contempt:
 {¶ 63} "14) Contempt: Defendant repeatedly failed to comply with the interim orders issued by this court and refused to cooperate in the discovery process throughout the pendency of this case. Despite having been previously found in willful contempt of court, being sentenced to 30 days in jail, and being fined $250.00 and costs, the Defendant willingly, knowingly and purposefully failed to produce all the bank and business records required to complete the court-ordered business evaluation. Defendant was released early from his jail sentence upon the condition that he fully comply with the court's prior orders. Defendant did not meet this condition and he remains in contempt of court. As a result, Defendant shall pay partial attorney fees of $2,500, and shall pay the remaining balance of Frank Monaco's fees for the business evaluation and court testimony, which is $5,625.00. These amounts shall be paid within 30 days of the final order/judgment entry of this matter."
 {¶ 64} Appellant specifically objected to this recommendation in his objections to the magistrate's decision filed August 27, 2007. By objecting, appellant opened the door for the trial court to re-examine the issue and decide to revoke the bond and order execution of the remaining jail sentence. We find no abuse of discretion by the trial court in re-imposing the jail time and ordering appellant to pay attorney fees and Mr. Monaco's fees because the record is rife with appellant's failure to cooperate, even to the date of trial, on the valuation of the business. May 14, 2007 T. at 121-122; July 27, 2007 T. at 7-9. As the trial court stated in its November 9, 2007 judgment entry denying appellant's request for stay of the jail time, "[t]he purpose for a sentence in a `CRIMINAL *Page 13 
CONTEMPT' is punitive in nature. This court is punishing the defendant for his intransigence and failure to abide by the court's discovery orders which has prejudiced the other party and the court's ability to have a complete, accurate picture upon which to base a final order."
 {¶ 65} In its decision filed August 15, 2007, the magistrate recommended the following on the issue of attorney's fees:
 {¶ 66} "15) Attorney's Fees: The Defendant's conduct caused unnecessary delays in litigation of this matter and his blatant disregard for the Court's time and authority supports an additional award of attorney's fees to the Plaintiff in the additional amount of $2,000.00."
 {¶ 67} Again, we find no abuse of discretion by the trial court in ordering appellant to pay appellee $2,000 in attorney's fees given his conduct sub judice.
 {¶ 68} Assignment of Error IV is denied.
 {¶ 69} The judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division, is hereby affirmed in part and reversed in part.
 Farmer, P.J. Edwards, J. and Delaney, J. concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division, is affirmed in part and reversed in part. The matter is remanded to said court for further proceedings consistent with this opinion. Costs to appellant. *Page 1