[Cite as *Lojek v. Lojek*, 2010-Ohio-5156.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| Wendy M. Lojek, | : | Case No. 10CA8 |
| Plaintiff-Appellant, | : | |
| v. | : | **DECISION AND JUDGMENT ENTRY** |
| Paul M. Lojek, | : | |
| Defendant-Appellee. | : | File-stamped date: 9-29-10 |

_____

### APPEARANCES:

Amy J. Weis & C. Gustav Dahlberg, Columbus, Ohio, for Appellant.

Paul G. Bertram, Marietta, Ohio, for Appellee.

_____

Kline, J.:

**{¶1}** Wendy Lojek appeals the divorce decree of the trial court. On appeal, Wendy contends that the trial court abused its discretion by: (1) not considering all of the relevant statutory spousal support factors; (2) determining that Wendy was guilty of financial misconduct; (3) failing to articulate a factual basis for the amount of spousal support; (4) failing to award spousal support for an indefinite time period; (5) failing to consider the offset of Wendy's Social Security benefits against her public pension; and (6) improperly dividing Paul's qualified pension plan.

**{¶2}** Having reviewed the record, we find that there is ample evidence to support each of the trial court's findings of fact and that none of the trial court's conclusions of

law constitute an abuse of discretion.  Accordingly, we affirm the judgment of the trial court.

I.

{¶3}     Wendy and Paul married on October 13, 1984 in Grand Island, New York. Two children were born as issue of the marriage, and both children have now reached their majority.  Both parties are in their fifties and in good health.

{¶4}     Paul works for Globe Metallurgical and makes substantially more than Wendy.  Wendy works for the Marietta Municipal Court.  The couple moved to Ohio when Globe Metallurgical closed its Niagara Falls plant, and Paul became the plant manager of the company's Ohio plant.

{¶5}     The trial court held a trial on November 13, 2009.  On February 10, 2010, the trial court issued a decree of divorce and a journal entry resolving the disputed issues of the parties.  Among other requests, Wendy had requested indefinite spousal support of $2,500 a month.  But the trial court ordered Paul to pay Wendy spousal support for the next three and one half years in a total amount of $37,500 (the monthly amount of the payment varies but it never exceeds $1,500).

{¶6}     Wendy appeals and assigns the following errors for our review: I. "The trial court erred and abused its discretion by not considering all of the factors set forth in [R.C. 3105.18(C)]."  II. "The trial court erred and abused its discretion in determining that Appellant was guilty of financial misconduct."  III. "The trial court erred and abused its discretion in failing to articulate a factual basis for its award of spousal support."  IV. "The trial court erred and abused its discretion in failing to award spousal support for an indefinite period of time."  V. "The trial court erred and abused its discretion when it

failed to consider the offset of Appellant's Social Security benefits against her public pension in its distribution of the parties' assets and liabilities." And, VI. "The trial court erred and abused its discretion by improperly dividing Appellee's qualified pension plan."

II.

**{¶7}** On appeal, Wendy challenges both the trial court's award of spousal support and the trial court's distribution of marital assets.

A. <u>R.C. 3105.18(C) Factors</u>

**{¶8}** In her first assignment of error, Wendy contends that the trial court abused its discretion in its consideration of factors under R.C. 3105.18(C). This particular statutory section sets out a series of factors that a court must consider when determining whether to award spousal support.

**{¶9}** "A trial court has broad discretion in establishing and modifying a spousal support award." *Cassidy v. Cassidy*, Pike App. No. 03CA721, 2005-Ohio-3199, at ¶27, citing *Schultz v. Schultz* (1996), 110 Ohio App.3d 715, 724. See, also, *Addington v. Addington*, Scioto App. No. 05CA3034, 2006-Ohio-4871, at ¶8. "Thus, we will not reverse a spousal support award absent an abuse of discretion. * * * An abuse of discretion involves more than an error of law or judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary." *Cassidy* at ¶27, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218 (internal citation omitted).

**{¶10}** In order to demonstrate an abuse of discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the

exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 1996-Ohio-159.

{¶11}    In part, R.C. 3105.18(C) requires a trial court to consider the following factors when determining spousal support: "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; * * * (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; * * * (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable."  Wendy contends that the trial court erred in its consideration of several of these factors.

{¶12}    Wendy first contends that the trial court erred when it failed to correctly determine Paul's income at $104,460.  The trial court found that Paul's income was $87,050[1] "as of October 30, 2009[.]"  The testimony Wendy relies on to refute this

---

[1] We note that the sole difference between Wendy's income figure and the income figure stated by the court is the number of months.  Wendy's figure computes to a monthly income of $8,705.  This number, times ten, is precisely the amount that the trial court attributed to Paul for income through October, the tenth month of the year.  Furthermore, the trial court was clearly cognizant of the fact that Paul could have

conclusion is a specific reference to Paul's yearly salary for 2009. Paul testified that his gross salary for 2009 included profit sharing and performance bonuses. The performance bonus alone was $20,000, and Paul testified that in all of the years he worked for the company this is the only one in which he received a performance bonus. Trial Transcript at 108-110. The trial court calculated Paul's income by subtracting the performance and profit sharing bonuses from his year to date income as of October 30, 2009. The trial court in its findings of fact clearly understood that the $87,050 figure only included income from the first ten months of the year.

{¶13}    We cannot agree that the trial court abused its discretion by not including the bonuses in Paul's income. The trial court may have reasonably concluded that it could not have any confidence that Paul would receive those bonuses in subsequent years. We also cannot agree that the trial court abused its discretion in calculating Paul's income for only the first ten months of the year. The trial court's findings indicate that the court clearly understood this figure represented Paul's income for only a portion of the year. This statutory factor requires the trial court to consider income, but places no requirement on the court to consider the income from a particular time frame. While calculating a party's income for only ten months is unusual, that alone does not constitute an abuse of discretion.

{¶14}    Wendy next contends the trial court erred in considering the standard of living established during the marriage. Wendy claims the trial court erred by determining that the standard of living that the parties established during the marriage depended on over-spending. Paul testified that Wendy handled all of the finances and incurred

_____

paid more than he did in spousal support because Paul in fact offered to pay more than the trial court awarded. The trial court clearly did not award more spousal support for reasons other than Paul's ability to pay.

substantial charges on the credit cards. Trial Transcript at 94; Paul's Exhibit 3. Paul further testified that, several times, he took out a home mortgage, borrowed money against his 401K, and cashed out his life insurance policy in order to pay credit card bills. Trial Transcript at 89-96. At trial, Wendy's counsel made the point several times that Paul did not claim the expenses were frivolous, but rather the fact that those expenses were put on a credit card. Trial Transcript at 129, 137-42. Even accepting that these expenses were not frivolous, nonetheless the trial court may have reasonably concluded that the parties were living beyond their means. For instance, clothing is a necessity, but an individual who purchases excessive, or excessively expensive, clothing is living beyond his or her means.

{¶15}     Wendy next contends that the trial court abused its discretion in determining the relative assets and liabilities of the parties. Wendy contends the trial court erred in relying on Paul's proposed findings of fact to determine that Paul should be credited for $597.17 for the purchase of tires. The finding reads as follows: "After the divorce, [Wendy] complained to [Paul] that she needed new tires for her vehicle. The parties acknowledged that $597.17 still remained in Attorney Buell's trust account, wherein [Paul] authorized Attorney Buell to release the money to [Wendy] so that she could obtain new tires for the truck. **The parties agreed that the $597.17 would be offset to [Paul] in the final disposition.**" (Emphasis in original). In other words, Paul represented that the parties had stipulated to the offset. On appeal, Wendy contends that the trial court erred because the expense accrued after the divorce and does not rely on facts in evidence. Wendy does not appear to contest the veracity of the claim by Paul that the parties had reached an agreement on the $597.17. Absent an attack on

the veracity of the stipulation, we cannot find that the trial court abused its discretion in relying on the representation of an attorney that the parties had stipulated to a particular fact.

**{¶16}** Wendy also contends that the trial court abused its discretion when it determined that the house was worth $239,000 rather than the appraisal of $249,000. But the parties agreed that there was a contingent sale pending for $239,000. Trial Transcript at 149. The house was therefore subject to a contract for sale at $239,000, and we cannot say the trial court abused its discretion in determining that the value of the house was equal to the price of the contract for sale. The fact that the contract was a contingent contract, unlikely to actually be performed, does not alter this conclusion. The trial court could nonetheless rely on the contract price to provide a value for the residence.

**{¶17}** Wendy cites a portion of the transcript for the proposition that the parties had stipulated as to the value of the house. But this passage does not establish that the parties stipulated to $249,000 as the value of the house. Instead, it establishes that the parties merely agreed the house had been appraised for that sum.

**{¶18}** "[Wendy's Counsel:]                Your Honor, one - - one correction. On the schedule of assets, we list the real estate at 239. That's the contract price. The - - actual appraisal, done May 28th, that the parties had done, appraised the property at 249. So.

**{¶19}** "[Paul's Counsel:]                Yeah, and so the Court - -

**{¶20}** "[Wendy's Counsel:]                Just so the Court's aware of that.

**{¶21}** "[Paul's Counsel:]                      Yeah, so the Court's aware of it, because - - and I think [Wendy's Counsel] and I both agree, that the market ultimately demands what the true appraisal would be of that, even though the appraisal was done by Ty Davis and we give it as an appraisal and I will provide it to the Court, that was the only offer that they had.

**{¶22}** "THE COURT:                          And they were willing to accept that, so - -

**{¶23}** "[Wendy's Counsel:]                 Yeah.  Yeah.

**{¶24}** "[Paul's Counsel:]                    Yeah, they were willing to accept that.

**{¶25}** "THE COURT:                          - - what a willing - - sell to willing buyer is your fair market value.

**{¶26}** "[Paul's Counsel:]                    Correct.

**{¶27}** "[Wendy's Counsel:]                 That's exactly right."  Trial Transcript at 21-22.

**{¶28}** The gist of the foregoing passage is that the parties agreed the appraisal was for $249,000, but that the contract for sale was for $239,000.  To the extent the parties stipulated that the market value of the marital residence should be equal to what a willing buyer would pay, the trial court did not abuse its discretion in relying on the contingent contract price to value the marital residence.

**{¶29}** Wendy next claims the trial court also erred in determining the relative assets and liabilities of the parties because the "trial court also failed to consider the fact that although the marital portion of the parties' retirement accounts were to be equally divided, [Paul] was retaining a significant separate interest in the same which were not being divided equitably between the parties."  Wendy's Brief at 8.  The portion of the

transcript that Wendy cites for this proposition consists of an imprecise description of premarital assets. She provides no particular argument explaining precisely how these premarital assets should have changed the outcome of the case. Nor does Wendy present any precise accounting of what these premarital assets consist of. Rather the cited portion of the transcript reads as follows:

**{¶30}** "Q. You've seen the retirement figures and values for your husband's retirement package?

**{¶31}** "A. Yes.

**{¶32}** "Q. He has substantially more earnings than you. You -- you understand he's going to accumulate even better retirement benefits, versus what you're accumulating?

**{¶33}** "A. Yes, I do.

**{¶34}** "Q. He also has some premarital aspect to his [retirement benefits], that he's keeping?

**{¶35}** "A. Yes.

**{¶36}** "Q. I mean, he worked for this company a little -- or, Social Security system a little before that?

**{¶37}** "A. Yes.

**{¶38}** "Q. You feel you need to put a little money aside to supplement your – your [Ohio public employee retirement system benefits] and whatever portion of his you're going to get?

**{¶39}** "A. Yes, I do." Trial Transcript at 48.

**{¶40}** Absent an explanation for why premarital assets would significantly change the outcome of a case, we cannot find an abuse of discretion. It is possible that the

record somewhere contains a detailed explanation of these premarital assets. But "'[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out.'" *State v. Hurst*, Washington App. No. 08CA43, 2009-Ohio-3127, at ¶49, quoting *State v. Carman*, Cuyahoga App. No. 90512, 2008-Ohio-4368, at ¶31; *City of Whitehall v. Ruckman*, Franklin App. No. 07AP-445, 2007-Ohio-6780, at ¶20. We note that, based on her brief, Wendy does not dispute that these assets are premarital. Instead, she merely contends that the trial court should have considered these premarital assets when awarding spousal support. The trial court clearly understood that Paul had the income and assets to pay more in spousal support than the court's order required. Again, it is clear that the trial court's decision not to award more in spousal support was not based on Paul's ability to pay.

**{¶41}**     Wendy next claims that the trial court erred by not considering her contribution to the earning ability of Paul. When the couple lived in New York, Wendy states that she took a part time job in order to stay home and help raise their daughters. Because of this, Wendy believes she was laid off when she might not have been if she had been a full time worker.

**{¶42}**     Even granting this, Wendy likely would have lost that job when the family moved to Ohio. And her present income is greater than the income she had when she was working in New York as a teaching assistant. Trial Transcript at 28-30, 32. The record does not establish how much Wendy earned at the job she was laid off from in New York. Wendy and Paul have high school educations. The trial court may have reasonably concluded that Wendy's work at home did facilitate Paul's career, but Wendy's earning potential had not been significantly altered. In addition, the trial court

may have discounted Wendy's speculation that had she been working full time in New York, she would not have been laid off. In any event, we cannot find that the trial court abused its discretion in discounting this factor.

**{¶43}** Finally, the trial court found as a factor that Wendy had "a severe spending problem and cannot manage money, nor credit[.]" Wendy appeals this determination and contends that the record demonstrates that the expenditures were necessary marital expenses. But the record contains ample evidence that Wendy controlled the couple's finances, that the couple lived beyond their means, that Wendy used unsecured credit card debt inappropriately, and that the amount of credit card debt required the couple to liquidate assets several times in order to pay off the debt. Given this evidence in the record, we cannot say that the trial court abused its discretion in determining that Wendy had a habit of over-spending.

**{¶44}** Thus, we reject each of Wendy's arguments raised under this assignment of error. Accordingly, we overrule Wendy's first assignment of error.

### B. Financial Misconduct

**{¶45}** Wendy, in her second assignment of error, claims that the trial court erred and abused its discretion by determining that she had committed financial misconduct. Wendy first contends that the trial court erred because financial misconduct is not a permissible factor to consider under R.C. 3105.18(C). Among other factors, R.C. 3105.18(C)(1)(n) authorizes the court to consider "[a]ny other factor that the court expressly finds to be relevant and equitable." Wendy does cite a case in which the Fifth District Court of Appeals concluded that determinations of financial misconduct "should have been addressed and/or assigned when determining the issue of unequal

distribution of marital assets, not spousal support[.]" *Ebner v. Ebner*, Stark App. Nos. 2007CA00318 & 2007CA00346, 2008-Ohio-5335, at ¶49.

**{¶46}** The *Ebner* court provides scant justification for its conclusion, but the argument apparently is that financial misconduct is an express factor when considering the division of marital property. R.C. 3105.171(E)(3). The legislature included no such factor in the lengthy list of factors a trial court is required to consider when deciding whether to award spousal support. R.C. 3105.18(C). The inference is that the legislature intended to omit the factor from consideration when awarding spousal support. This is so because the legislature expressly included financial misconduct under the section regulating the division of marital assets but not under the section regulating spousal support.

**{¶47}** We are not persuaded. The legislature intentionally wrote a broad discretionary grant for the trial court to consider any factor that the trial court considered relevant. R.C. 3105.18(C)(1)(n). Simply because the legislature referred to the factor expressly elsewhere in the code does not justify the inference that the legislature must expressly refer to financial misconduct here to enable the trial court to consider it. Thus, we hold that a trial court may consider financial misconduct under R.C. 3105.18(C). See *Tyree v. Tyree*, Licking App. No. 03 CA 89, 2004-Ohio-3967, at ¶34; see, also, *Kennedy v. Kennedy*, Columbiana App. No. 2002 CO 09, 2003-Ohio-495, at ¶38, citing *Winston v. Winston* (Nov. 16, 2000), Stark App. No. 1999CA00313.

**{¶48}** The trial court apparently concluded that Wendy had engaged in financial misconduct as defined under R.C. 3105.18(C). The trial court also noted that Paul did not request an unequal award under that section. Finally, the trial court considered this

issue as it decided how much spousal support to award. We cannot say that the trial court abused its discretion in considering this factor, along with the other factors under R.C. 3105.18(C), in setting the amount of spousal support.

**{¶49}** Wendy also contends that the evidence does not support a finding of financial misconduct. Financial misconduct includes, "but [is] not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets[.]" R.C. 3105.171(E)(3). The trial court found the following in regard to the credit card debt: "Throughout the marriage [Wendy] incurred large sums of debt on credit cards. Some of the expenditures were for necessities and many were not. She makes the minimum monthly payment and does not pay the balance due. She has given no explanation of how she spent her cash surplus." Trial Court's Findings at 5. In other words, the trial court found that Wendy failed to account for substantial sums of money.

**{¶50}** Wendy argues that, at most, this constitutes evidence of excessive spending, and excessive spending alone does not constitute financial misconduct. At trial, Paul testified as follows:

**{¶51}** "Q. Were you under impression with her income at Marietta Municipal Court, your income at Globe, that the balances were zero – should have been zeros every month.

**{¶52}** "A. A lot less than what they were. I – between zero and a thousand dollars, is what I was expecting." Trial Transcript at 95.

**{¶53}** In other words, Paul testified that that their income was sufficient to pay off the credit card bills, but that Wendy failed to do so. Neither party established what the actual income was spent on. The trial court was therefore entitled to conclude that

Wendy failed to account for the money that the couple had earned through their salaries. This is sufficient evidence to support the trial court's finding of financial misconduct.

**{¶54}** Accordingly, we overrule Wendy's second assignment of error.

### C. The Amount of Spousal Support

**{¶55}** In her third assignment of error, Wendy contends that the trial court erred and abused its discretion in failing to articulate the basis of the spousal support award. Wendy notes that the award is less than the total amount Paul was willing to pay (Paul proposed $1,000 a month for 60 months). Wendy also calculates that based on her post divorce budget, she would have annual expenses totaling more than $40,000 with an annual income of only $22,006 after taxes. This leaves a disparity of more than $18,000 between her income and expenses, per her calculation. The trial court ordered spousal support payable as follows: "$1,500 per month for 6 months following the final entry, followed by 6 months at $1,250, followed by 6 months at $1,000 per month followed by 12 months at $750 per month, followed by 12 months at $500 per month." Wendy calculates that she would only receive $16,500 of taxable spousal support for the first year and $10,500 of taxable spousal support for the second year.

**{¶56}** But as Wendy notes, the trial court clearly believed that some of her expenses were exaggerated or extravagant. In particular, the trial court found that the following expenses should either be lowered or omitted: gasoline ($200), entertainment ($150), groceries ($500), cigarettes ($150), her daughter's car payment ($300), and her daughter's student loans ($101).

{¶57}     The trial court may have determined the decreasing payments were

necessary either because Wendy, in setting up her own household, would have higher

expenses for the immediate future that would gradually decrease, or because the trial

court wanted to set up a system of payments that gradually decreased to compel

Wendy to live within her means.  In either case, we find no abuse of discretion here.

{¶58}     Accordingly, we overrule Wendy's third assignment of error.

### D. Length of Spousal Support

{¶59}     Wendy next claims that the trial court abused its discretion by failing to award

spousal support for an indefinite time period.

{¶60}     Wendy's brief begins this assignment of error with an extended discussion of

whether the trial court chose the correct date for the end of the parties' marriage.  The

court chose June 5, 2009.  The relevance of this argument to the assignment of error is

never explained.  Regardless of which date was the correct end date for the marriage,

the marriage lasted for more than twenty years and was unquestionably a marriage of

long duration.

{¶61}     "The modern trend favors terminating alimony on a date certain.  The reason

for awarding sustenance alimony payable only to a date certain is that the payee's need

requiring support ceases, when, under reasonable circumstances, the payee can

become self-supporting." *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 69.  "[E]xcept in

cases involving a marriage of long duration, parties of advanced age or a homemaker-

spouse with little opportunity to develop meaningful employment outside the home,

where a payee spouse has the resources, ability and potential to be self-supporting, an

award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain[.]" Id.

**{¶62}** This marriage was unquestionably one of long duration (approximately twenty four and one half years by the trial court's count) and as such arguably the standard presumption against indefinite awards of spousal support is inapplicable. See *Handschumaker v. Handschumaker*, Washington App. No. 08CA19, 2009-Ohio-2239, at ¶21 (indicating that marriages over twenty years of duration are sufficient to support an award of spousal support for an indefinite duration). But "*Kunkle* does not stand for the proposition that permanent spousal support is mandated in marriages of long duration." *Batten v. Batten*, Fairfield App. No. 09-CA-33, 2010-Ohio-1912, at ¶70 (internal citations omitted); *Bello v. Bello*, Delaware App. No. 09CAF040041, 2009-Ohio-5982, at ¶42; *Lewis v. Lewis*, Jefferson App. Nos. 06 JE 49 & 07 JE 27, 2008-Ohio-3342, at ¶100; *Manos v. Manos*, Summit App. No. 24717, 2010-Ohio-1178, at ¶28, citing *Geschke v. Geschke*, Medina App. Nos. 3266-M & 3268-M, 2002-Ohio-5426, at ¶19. See, also, *Lepowsky v. Lepowsky*, Columbiana App. No. 06 CO 23, 2007-Ohio-4994, at ¶81 (indicating that, even in a marriage of long duration, if the "the payee spouse has the ability to work outside the home and be self-supporting, a spousal support award should include a termination date.").

**{¶63}** Wendy works full time and evidently the trial court determined that she could become self-sustaining on her annual salary of $28,000. We do not find this to be an abuse of discretion. Wendy notes that there will be a several year gap in between the cessation of spousal support and the beginning of any retirement benefits. We do not

find that this alone constitutes an abuse of discretion where the payee spouse is fully employed.

**{¶64}** Wendy argues that "[t]his Court has previously held that in such cases, it is reasonable and appropriate to make an award of spousal support for an indefinite period. * * * As such, it is inappropriate to limit the award of spousal support in this case to only three and a half years." Wendy's Brief at 17. We cannot agree. Trial courts are vested with broad discretion to consider these issues. Discretion implies that the trial court has a range of choices. Simply because the trial court was empowered to impose an indefinite award of spousal support, it does not follow that failure to do so is an abuse of discretion.

**{¶65}** Accordingly, we overrule Wendy's fourth assignment of error.

### E. Retirement Accounts

**{¶66}** Next, Wendy claims that the trial court abused its discretion when it failed to "properly offset [Wendy's] public pension against her Social Security benefits[.]" Wendy's Brief at 20. Specifically, Wendy claims that the trial court should have "compute[d] the present value of a Social Security benefit had the [public plan] participant been participating in the Social Security system. This present value should then be deducted from the present value of the [public pension] at which time a figure for the marital portion of the pension could be derived and included in the marital estate for distribution purposes." *Hurte v. Hurte*, 164 Ohio App.3d 446, 2005-Ohio-5967, at ¶15, quoting *Neel v. Neel* (1996), 113 Ohio App.3d 24, 30 (other citations omitted).

**{¶67}** Unlike her previous assignments of error, Wendy here challenges the trial court's distribution of marital assets. "A Court of Common Pleas has broad discretion to

determine what property division is equitable in a divorce proceeding.  The mere fact that a property division is unequal, does not, standing alone, amount to an abuse of discretion."  *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, at paragraph two of the syllabus.

**{¶68}** The trial court relied on the stipulated valuations of the parties.  See Wendy's Brief at 18; Joint Exhibits 1 & 2.  Perhaps Wendy's retirement benefits would be more correctly valued with the method laid out in *Hurte*.  Nonetheless, we cannot agree that a trial court abuses its discretion when it relies on a stipulation of the parties for its valuation of marital assets.  See *Snyder v. Snyder*, Union App. No. 14-06-52, 2007-Ohio-2676, at ¶4 (indicating that a trial court may abuse its discretion where it fails to accept a stipulation).

**{¶69}** Accordingly, we overrule Wendy's fifth assignment of error.

F. Division of Paul's Qualified Pension Plan

**{¶70}** In her final assignment of error, Wendy contends that the trial court erred by indicating that Wendy was to receive 50% of the value of Paul's interest in the Globe Metallurgical pension plan.  The basis of her argument is that the trial court should have divided "the retirement plan via a qualified domestic relations order that deferred the actual division until the participant spouse begins collecting on the pension[.]"  Wendy's Brief at 21.  But the docket reflects that the trial court issued a qualified domestic relations order, and Wendy states in her brief "one [qualified domestic relations order] has been issued to divide this benefit, the Plan Administrator has rejected the same, and the parties are presently working * * * to issue a corrected [qualified domestic relations order] that accurately divides this account.  Appellant includes the instant

assignment of error only to preserve the record herein." Wendy's Brief at 21. All parties, including the lower court, appear to agree that the issuance of the requested qualified domestic relations order is appropriate under the trial court's final order. We note that this issue does not prevent the present order from being a final appealable order. *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, at syllabus. We find that this assignment of error is moot, and we decline to address it. App.R. 12(A)(1)(c).

**{¶71}** Accordingly, we overrule Wendy's sixth assignment of error.

III.

**{¶72}** Having overruled each of Wendy's assignments of error, we affirm the judgment of the Washington County Common Pleas Court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and appellant pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.


Abele, J.:  Concurs in Judgment and Opinion
Harsha, J.:  Concurs in Judgment Only.



For the Court


BY: _____
         Roger L.  Kline, Judge




### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**