[Cite as *Morgan v. Morgan*, 2017-Ohio-402.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

YONG S. MORGAN                                :
                                                          :
          Plaintiff-Appellant                  :          C.A. CASE NO.   27164
                                                          :
v.                                                       :          T.C. NO. 12LS25
                                                          :
GREGORY S. MORGAN                        :          (Civil Appeal from Common
                                                          :           Pleas Court, Domestic Relations)
          Defendant-Appellee                :
                                                          :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___3rd___ day of ___February___, 2017.

. . . . . . . . . . .

DAVID M. McNAMEE, Atty. Reg. No. 0068582, 2625 Commons Blvd., Suite A, Beavercreek, Ohio 45431
          Attorney for Plaintiff-Appellant

ABDOL-REZA PIRNIA, Atty. Reg. No. 0076486, 7071 Corporate Way, Suite 101, Dayton, Ohio 45459
          Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Plaintiff-appellant Yong S. Morgan (hereinafter "Wife") appeals a decision of the Montgomery County Court of Common Pleas, Domestic Relations Division, overruling her objections and adopting the magistrate's decision regarding spousal support and the allocation and distribution of the parties' marital property.   Wife filed a timely notice of

appeal with this Court on June 29, 2016.

{¶ 2} Defendant-appellee Gregory C. Morgan (hereinafter "Husband") and Wife were married on July 1, 1988, in Seoul, Korea. The parties had no children. On August 28, 2012, Wife failed a complaint for legal separation. Thereafter, Husband filed an answer and counterclaim for divorce on October 29, 2012. On November 6, 2012, the trial court issued a temporary order awarding Wife temporary spousal support in the amount of $400.00 per month plus an additional amount for housing expenses. On January 22, 2013, the trial court modified the temporary order wherein it reset the amount of temporary spousal support for Wife at $1,600.00 per month during the pendency of the divorce.

{¶ 3} A trial was held before a magistrate on December 15 and 16, 2014. Both parties were represented by counsel throughout the pendency of the divorce and subsequent trial. On February 13, 2015, the magistrate issued a decision allocating debt and distributing marital assets to both parties, as well as awarding spousal support to Wife. After several continuances were granted by the trial court, Wife filed her objections to the magistrate's decision on August 3, 2015. Husband filed his response to Wife's objections on August 12, 2015.

{¶ 4} On April 6, 2016, the trial court overruled Wife's objections and adopted the magistrate's decision in its entirety. Thereafter, a Final Judgment and Decree of Divorce was filed on June 2, 2016, which incorporated the terms set forth in the trial court's decision issued on April 6, 2016.

{¶ 5} It is this judgment that Wife now appeals.

{¶ 6} Wife's first assignment of error is as follows:

{¶ 7} "THE TRIAL COURT ERRED WHEN IT USED THE APRIL 11, 201[2] DATE AS THE VALUATION DATE TO DIVIDE THE PARTY'S ASSETS."

{¶ 8} In her first assignment, Wife contends that the trial court erred when it concluded that the de facto termination date of the parties' marriage was April 11, 2012, for the purpose of valuing and dividing the marital assets.

{¶ 9} Initially, we note that the final decree specifies that the parties were married on July 1, 1988, but it does not specify when the marriage ended. However, in its decision adopting the magistrate's decision, the trial court found that it was equitable to both parties to utilize April 11, 2012, as the de facto termination date of the marriage. R.C. 3105.171(G) provides that, when dividing marital property, the trial court "shall specify the dates it used in determining the meaning of 'during the marriage.'" "Normally, the final hearing date is presumed to be the termination date of the marriage for purposes of property division, unless the court uses a de facto termination date. *See, e.g.,* R.C. 3105.171(A)(2), and *Badovick v. Badovick* (1998), 128 Ohio App.3d 18, 31, 713 N.E.2d 1066." *Avery v. Avery,* 2d Dist. Greene No. 2001–CA–100, 2002 WL 360296, *5 (March 8, 2002).

{¶ 10} "During the marriage" means the period of time from the date of the marriage through the date of the final hearing in the divorce action, unless the court determines that either or both dates would be inequitable, in which event "during the marriage" means the period between the dates the court selects. R.C. 3105.171(A)(2). "The trial court has broad discretion in choosing the appropriate marriage termination date and this decision should not be disturbed on appeal absent an abuse of discretion." *Walpole v. Walpole,* 8th Dist. Cuyahoga No. 99231, 2013–Ohio–3529, ¶ 102, citing *Berish*

*v. Berish,* 69 Ohio St.2d 318, 321, 432 N.E.2d 183 (1982).

{¶ 11} At the divorce hearing, the following exchange occurred while the parties were discussing stipulations with the trial court prior to calling witnesses:

The Court: Okay.   And the only other thing I understand it [sic], the parties separated and have been separate and apart at least from April 15, 2012?

Plaintiff's Counsel: That's correct, Your Honor.

Wife: She said 2012.   I mean, 2012, April 12.

The Court: April 12.

Wife: Yes.

The Court: *April 11*[, 2012]?

Wife: Yes.

(Tr. 5, 6)

{¶ 12} Husband also gave the following testimony regarding the significance of April 11, 2012, during his direct testimony:

Defense Counsel: Okay: And when was the last date you resided in the marital residence?

Plaintiff's Counsel: April 11, 2012.

Defense Counsel: Just having [Husband] confirm it.

The Court: Say it, sir.   The nods don't get recorded or put down.

Husband: April of 2012.

\*\*\*

Defense Counsel: Why were they present at the residence on April

11, 2012?

Husband: Whenever a member asks for assistance to go to the residence, *to leave the residence*, it is always policy that if they ask for law enforcement presence, law enforcement goes with them. Along with a supervisor. To go to the residence.

{¶ 13} In our view, the evidence supports the trial court's conclusion that the parties no longer contributed to each other for each other's benefit as partners, and their marriage was irretrievably broken, as of April 11, 2012. By that date, the parties resided in separate locations and had apparently ceased any pursuit of a reconciliation. Additionally, the evidence adduced at the divorce hearing established that as of April 11, 2012, the parties shared several bank accounts containing marital funds. After the parties separated on April 11, 2012, the record established that some of the bank accounts shared by the parties had been drained and thereafter transferred to accounts separately owned by Husband or Wife.

{¶ 14} Based on the parties' stipulation, the trial court found that the duration of the parties' marriage was from July 1, 1988, through April 11, 2012. A court must exercise its discretion to choose a date upon which to value the parties' assets in an equitable manner. Here, the parties stipulated to a de facto termination date of their marriage for purposes of valuing and dividing marital assets. Specifically, the trial court correctly valued the following accounts as of April 11, 2012: 1) Husband's USAA Roth IRA # 6385: $1,033.00; 2) USAA Joint Savings Account # 0163: $29,034.59; and Husband's USAA Checking Account # 8707: $1,207.00 The trial court's use of April 11, 2012, in order to determine the duration of the parties' marriage and to value

their marital assets, including bank accounts to which both parties had access, was not unreasonable, arbitrary or unconscionable. Further, the trial court did not abuse its discretion by not altering the value of assets based on withdrawals and deposits made by either party between the de facto termination date and trial.

{¶ 15} Wife's first assignment of error is overruled.

{¶ 16} Wife's second assignment of error is as follows:

{¶ 17} "THE TRIAL COURT ERRED IN ITS FINDING REGARDING THE $195,427.79 DEPOSIT AND $195,602.48 WITHDRAWAL IN DECEMBER OF 2012."

{¶ 18} In her second assignment, Wife argues that the trial court erred when it failed to address the $195,427.79 deposit to the parties' USAA Joint Account 5253 and withdrawal of $195,602.48 from the same account in December of 2012.

{¶ 19} " 'The trial court enjoys broad discretion in determining the value of a marital asset; however, this discretion is not limitless. Our task on appeal is not to require the adoption of any particular method of valuation, but to determine whether, based on all the relevant facts and circumstances, the court abused its discretion in arriving at a value.' " *Entingh v. Entingh,* 2d Dist. Montgomery No. 22117, 2008–Ohio–756, at ¶ 9, citing *James v. James,* 101 Ohio App.3d 668, 681, 656 N.E.2d 399 (2d Dist.1995).

{¶ 20} A trial court errs and abuses its discretion if it "summarily arrives at a valuation of an asset or property, even though between the two extremes of the opposing parties' witnesses, without a proper evidential predicate." *Carter v. Carter,* 2d Dist. Clark No. 2008 CA 54, 2009–Ohio–3637, ¶ 17, citing *Rodriguez v. Rodriguez,* 11th Dist. Geauga No. 89–G–1498, 1990 WL 47458 (Apr. 13, 1990). Even though the trier of fact

is granted much leeway in obtaining a value, it must do so based upon the evidence before it. *Id.* Nevertheless, we will not disturb a trial court's valuation as long as the record contains sufficient evidence to support it.

{¶ 21} In support of her argument, Wife relies on the first page of Plaintiff's Exhibit 35, which purports to be an account overview of the transactions in USAA Joint Account 5253 for the months of March, June, September, and December of 2012. The first page of Pl.'s Exhibit 35 was printed from the internet on January 11, 2013, and states that during December of 2012, there were "Additions" of $195,427.79 and "Withdrawals and Fees" of $195,602.48. The document also establishes that the USAA Joint Account 5253 had a "Beginning Market Value" of $105,051.88 and an "Ending Market Value" of $105,286.91.

{¶ 22} Defendant's Exhibit OO, an Annual Investment Statement for USAA Joint Account 5253 establishes that the total amount of cash withdrawals for 2012 totaled $820.67 for advisory fees. Husband also testified that the only withdrawal from the account in 2012 was $820.67. Def.'s Exhibit OO was a record of all of the transactions which occurred in 2012 regarding USAA Joint Account 5253. Pursuant to the Husband's testimony and the Annual Investment Statement, the transactions that Wife alleges were not established, but rather controverted. Moreover, neither party listed these additional funds in their Affidavits of Financial Disclosure. Further, Wife did not list these alleged funds in her pre-trial statement filed with the trial court on March 11, 2013. Simply put, Wife failed to adduce sufficient evidence that the $195,427.79 deposit to the parties' USAA Joint Account 5253 and withdrawal of $195,602.48 from the same account in December of 2012 ever actually occurred.

{¶ 23} Upon review, we conclude that the trial court did not err when it valued the parties' USAA Joint Account 5253 at $101,650, which was its value as of April 11, 2012, the de facto termination date of the parties' marriage, as represented in Husband's Affidavit of Financial Disclosure filed on April 24, 2012. The trial court noted that Wife's Affidavit of Financial Disclosure filed in May of 2012 listed the balance of USAA Joint Account 5253 at $101,126.81 as of April 11, 2012, which it found to be "insignificantly different" from the balance in Husband's affidavit.

{¶ 24} Wife's second assignment of error is overruled.

{¶ 25} Wife's third assignment of error is as follows:

{¶ 26} "THE TRIAL COURT ERRED WHEN IT CREDITED PLAINTIFF WITH $160,000 FROM THE EGLIN ACCOUNT."

{¶ 27} In her third assignment, Wife argues that the trial court erred when it credited her with $160,000.00 transferred to her by Husband from his Eglin Federal Credit Union Account # 2043 to an account held by Wife in South Korea. Wife argues that this amount was a loan to her brother which occurred two years before the parties' separation. Nevertheless, Wife contends that the evidence adduced at trial does not support whether this money ever existed or what happened to it.

{¶ 28} At trial, Husband testified that approximately $160,000.00 was transferred from his Eglin account to Wife's account in South Korea in order to purchase real estate there. Wife acknowledged this transfer of funds in her pre-trial statement filed on March 11, 2013. Prior to trial, however, Wife refused to comply with discovery requests related to the transaction. We note that on June 4, 2014, the trial court issued an order to compel to Wife to produce her account records from South Korea and real estate records for

property purchased in South Korea. Wife refused to comply with the trial court's order.

{¶ 29} Based on her refusal to comply with Husband's discovery requests regarding her foreign account(s), the trial court found that the $160,000.00 transfer was properly attributable to Wife as marital property, and therefore, subject to distribution. We agree.

{¶ 30} The credibility of the witnesses and the weight to be given to their testimony were matters for the trier of fact to determine. The trial court found Wife's testimony on the subject of the $160,000.00 money transfer "disingenuous," especially considering the efforts made by Husband to obtain evidence with respect to the transaction and the account belonging to Wife in South Korea. The trial court also cited Wife's "persistent refusal" to comply with Husband's discovery requests as well as the order to compel issued by the trial court. In light of the foregoing, we conclude that the trial court did not err when it attributed $160,000.00 to Wife as marital property.

{¶ 31} Wife's third assignment of error is overruled.

{¶ 32} Wife's fourth assignment of error is as follows:

{¶ 33} "THE TRIAL COURT ERRED WHEN IT ALLOCATED $6,000.00 TO PLAINTIFF-APPELLANT'S PROPERTY DIVISION BECAUSE PLAINTIFF-APPELLANT DID NOT USE $6,000.00 OF MARITAL FUNDS TO PURCHASE THE VEHICLE; PLAINTIFF-APPELLANT USED $6,000.00 TO PAY OFF THE REMAINDER OF THE LOAN."

{¶ 34} In her fourth assignment, Wife contends that the trial court erred when it attributed $6,000.00 to her as marital funds that she used to pay off the remainder of a loan on a 2011 Mercedes Benz she purchased on June 27, 2012.

{¶ 35} At trial, Wife testified that she borrowed the entire amount after the parties separated in order to purchase the Mercedes. On December 11, 2012, Wife filed a police report claiming that the vehicle had been stolen. Wife testified that she paid the remainder of the loan balance after the insurance proceeds were applied. The record establishes, however, that Wife did not adduce any evidence regarding the source of the money that she used to pay the remainder of the car loan. Thus, the trial court found that the $6,000.00 used to pay off the remainder of the loan on the Mercedes was indeed marital funds and properly allocated the amount to Wife in the property division. As noted by the trial court, Wife's purchase of the Mercedes utilized marital funds after the de facto termination date of the parties' marriage. Accordingly, the trial court's decision to attribute $6,000.00 to her as marital funds was not an abuse of discretion.

{¶ 36} Wife's fourth assignment of error is overruled.

{¶ 37} Wife's fifth and final assignment of error is as follows:

{¶ 38} "THE TRIAL COURT ERRED IN DETERMINING PLAINTIFF-APPELLANT'S EARNING CAPACITY, ALONG WITH THE AMOUNT AND DURATION OF SPOUSAL SUPPORT."

{¶ 39} In her final assignment, Wife argues that the trial court erred when it determined the amount of spousal support because it incorrectly assessed her earning capacity. Wife further argues that the duration of her spousal support order of six years was too short based upon the length of the parties' marriage.

{¶ 40} Regarding spousal support, we note that "[d]omestic relations courts are granted broad discretion concerning awards of spousal support, and their orders will not be disturbed on appeal absent an abuse of discretion." *Perry v. Perry,* 2d Dist. Clark No.

07–CA–11, 2008–Ohio–1315, ¶ 5.

{¶ 41} In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider fourteen factors expressed in R.C. 3105.18(C)(1)(a)-(n), which governs awards of spousal support. "In allocating property between the parties to a divorce and in making an award of sustenance alimony, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law." *Rief v. Rief,* 2d Dist. Miami No. 06–CA–47, 2008–Ohio–266, ¶ 6, citing *Kaechele v. Kaechele,* 35 Ohio St.3d 93, 97, 518 N.E.2d 1197 (1988).

{¶ 42} R.C. 3105.18(C)(1) sets forth the following factors for the trial court to consider:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 43} Upon review, we conclude that the trial court's spousal support award of $100.00 per month to Wife was both reasonable and adequate pursuant to the factors set forth in R.C. 3105.18(C)(1). Evidence presented at trial established that Wife's earning ability lay somewhere between $32,400.00 and $43,100.00 annually. At trial, Husband presented Wife's bank statements from October of 2010, through April of 2012, to establish her income prior to the parties' separation. The evidence established that Wife earned approximately $150.00 to $200.00 per day in tips as a bagger at the Air Force

Base commissary. Wife testified that she did not claim any of her earnings from bagging as taxable income.

{¶ 44} We also note that Wife testified that after the parties separated, she was unable to work because of physical and emotional issues. Two witnesses, Colonel Scott Farrar and Charles Berg, contradicted Wife's testimony that she was not working. Specifically, Col. Farrar testified that he last observed Wife working at the commissary as a bagger in October of 2014. Berg testified that he is employed at the commissary as the head bagger, and he also handles all of the employee scheduling. Berg testified that Wife, at the time of the hearing, was in fact currently employed at the commissary as a bagger. Berg testified that a bagger averaged between $.50 and $5.00 a tip. Berg also testified that Wife had displayed no problems with showing up for work at the commissary. Lastly, Berg produced Wife's work schedules for 2013 and 2014. Based on the evidence adduced, the trial court found that Wife works approximately eighteen days a month earning an average of $150.00 per day, equal to an average annual income of $32,400.00. Based on Wife's bank statements, as well as the testimony of Col. Farrar and Berg, the trial court found that Wife's income was between $32,400.00 and $43,100.00 per year. The trial court's decision in this regard is supported by the record.

{¶ 45} Finally, although Wife disputes the trial court's decision regarding the amount and duration of the trial court's spousal support order, she fails to provide any argument that supports her assertion. Nevertheless, we note that Wife will receive approximately $25,000.00 per year from Husband's military retirement. Wife will also receive approximately $50,000.00 in marital assets from Husband's Thrift Savings Plan. The record further establishes that Wife will have a potential yearly income of $58,000.00

to $68,000.00, while Husband will have annual income of approximately $47,000.00. Accordingly, the trial court's decision to award Wife $100.00 per month in spousal support is not unreasonable.

**{¶ 46}** Additionally, the trial court's decision to award Wife spousal support for six years is not abuse of discretion. Husband has been paying Wife temporary spousal support since November of 2012. As previously noted, the Final Judgment and Decree of Divorce was filed on June 2, 2016. Thus, Husband has paid temporary support for four years, plus an additional six years per the permanent spousal support award, for a total of ten years of spousal support. In light of the parties' marriage of approximately twenty–four years, the trial court's decision to award Wife six years of permanent spousal support was not an abuse of discretion.

**{¶ 47}** The trial court enjoys broad discretion when considering whether to award spousal support. The crucial issue is to set a support award that is reasonable and appropriate. *McHenry v. McHenry,* 2d Dist. Montgomery No. 20345, 2004–Ohio–4047, ¶ 21. "[W]hile need and ability to pay remain important considerations for determining what amount of spousal support is reasonable and appropriate, the term 'need' is an elastic concept that differs from case to case, and that encompasses more than just ensuring that the obligee spouse has the basic necessities of food, clothing, and shelter." *Billingham v. Billingham,* 2d Dist. Montgomery No. 18403, 2001 WL 127764, *4 (February 16, 2001). In light of the duration of the parties' marriage, their respective incomes, and the term of support, we cannot say that the trial court abused its discretion in finding the amount of Wife's spousal support award to be reasonable and appropriate.

**{¶ 48}** Wife's fifth and final assignment of error is overruled.

{¶ 49} All of Wife's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies mailed to:

David M. McNamee
Abdol-Reza Pirnia
Hon. Denise L. Cross