[Cite as *Stokes v. Stokes*, 2021-Ohio-328.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

|  |  |  |
|---|---|---|
| GAIL J. STOKES | : | |
| | : | |
| | : | Appellate Case No. 2020-CA-12 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2018-DR-202 |
| v. | : | |
| | : | (Appeal from Common Pleas |
| FREDRICK STOKES | : | Court – Domestic Relations Division) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of February, 2021.

. . . . . . . . . . .

ADDIE J. KING, Atty. Reg. No. 0073959, 548 North Main Street, Urbana, Ohio 43078
      Attorney for Plaintiff-Appellee

FREDRICK STOKES, #A756-693, Belmont Correctional Institution, P.O. Box 541, St.
Clairsville, Ohio 43950
      Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

HALL, J.

**{¶ 1}** Fredrick Stokes appeals from the trial court's Judgment Entry and Decree of Divorce, which terminated his marriage to appellee Gail J. Stokes and resolved issues including the division of assets and liabilities, spousal support, child support, and child custody.

**{¶ 2}** Fredrick advances three assignments of error.[1] First, he contends the trial court erred in denying him due process by refusing him access to the divorce hearing while he was in prison. Second, he claims the trial court erred in failing to award him spousal support. Third, he asserts that the trial court erred in its property division and by not allowing him to store his property at Gail's house until his release from prison.

**{¶ 3}** The record reflects that Fredrick and Gail were married in October 2005. They have one child, who was born in 2006. Gail filed for divorce in October 2018. The matter proceeded to a two-day hearing in November and December 2019. At the time of the hearing, Frederick was serving a 30-month prison sentence for offenses involving domestic violence and protection-order violations related to Gail. One day before the hearing began, Fredrick filed a motion to be conveyed from prison to attend the hearing or, in the alternative, to be allowed to appear by video conference. The trial court overruled the motion, noting that there was not enough time to arrange the conveyance and that the prison's video-conference room was not available at the scheduled time. The trial court also noted that it could not justify the cost to Champaign County for the sheriff's office to travel nearly six hours round trip to transport Frederick and to remain with him throughout the hearing. Although defense counsel objected to the trial court's ruling,

---

[1] For purposes of convenience and clarity, we will refer to the parties by their first names.

counsel acknowledged that the prison "[did] not provide for [the] possibility" of a video conference. (Hearing Tr. at 6.) During the first day of the hearing, the parties' attorneys met with the trial court and narrowed the disputed issues for trial. (*Id.* at 6-32.)

{¶ 4} Thereafter, on November 26, 2019, Frederick again moved to be conveyed from prison to attend the second day of the hearing or, in the alternative, to be allowed to participate in the proceeding, which was scheduled for December 19, 2019 at 2:00 p.m., by video conference. In a December 4, 2019 entry, the trial court denied the request for conveyance, citing "the timeframe involved, travel distance, and costs to the county." As to participation by video conference, the trial court noted that Belmont Correctional Institution "was unable to conduct video conferencing at the time of said hearing as the room used for video conferencing closes at 2:30 p.m."

{¶ 5} Day two of the hearing proceeded as scheduled on December 19, 2019. Both parties were represented by counsel at the hearing. In addition, a number of exhibits were admitted by stipulation. Gail testified on her own behalf at the hearing. She also presented testimony from her mother, Lynette Heath. As for Frederick, his attorney called three witnesses. The first was Gail's father, Ronald Heath. The second was Frederick's daughter, Sierra Stokes. The third was Frederick's friend Michael Long. After hearing the evidence, the trial court filed a March 9, 2020 Final Judgment and Decree of Divorce. Among other things, the trial court's ruling awarded Gail legal custody of the parties' minor child. The trial court declined to award Gail child support, and it also declined to award Frederick spousal support. With regard to the parties' assets and liabilities, the trial court found that that neither party had any ownership interest in the marital residence, which they rented from Gail's parents. The trial court also divided the parties' various financial

accounts and the proceeds from the sale of a litter of puppies. In addition, the trial court divided various items of personal property, including vehicles, equipment, and the family dog.

{¶ 6} In his first assignment of error, Frederick contends the trial court erred in denying him access to his divorce hearing while he was incarcerated. Frederick acknowledges that he had no absolute due process right to attend or to participate in the hearing. He also acknowledges that we review the trial court's resolution of the issue for an abuse of discretion. Frederick nevertheless asserts that the trial court did abuse its discretion in denying him the ability to participate in the hearing either in person or via video conferencing.

{¶ 7} Upon review, we find Frederick's argument to be unpersuasive. In *Shepard Grain Co. v. Creager*, 160 Ohio App.3d 377, 2005-Ohio-1717, 827 N.E.2d 392, this court observed that a Fourteenth Amendment due process right of physical access to the courts has not been extended to prisoners. *Id.* at ¶ 17. "Thus, an absolute right for an incarcerated party to be present in a civil action does not exist. * * * The decision whether or not to allow an incarcerated party to be present is within the sound discretion of the trial court." *Id.*

{¶ 8} In *Creager*, this court identified non-exclusive factors to guide a trial court in the exercise of its discretion. They include " '(1) whether the prisoner's request to be present at trial reflects something more than a desire to be temporarily freed from prison; (2) whether he is capable of conducting an intelligent and responsive argument; (3) the cost and convenience of transporting the prisoner from his place of incarceration to the courthouse; (4) any potential danger or security risk the prisoner's presence might pose;

(5) the substantiality of the matter at issue; (6) the need for an early resolution of the matter; (7) the possibility and wisdom of delaying the trial until the prisoner is released; (8) the probability of success on the merits; and (9) the prisoner's interest in presenting his testimony in person rather than by deposition.' " *Id.* at ¶ 18, quoting *Mancino v. Lakewood*, 36 Ohio App.3d 219, 221, 523 N.E.2d 332 (8th Dist.1987).

**{¶ 9}** Although the trial court did not explicitly address each of the foregoing factors, it had no obligation to do so. The trial court did specifically note the cost of transporting Frederick and the need for officers to remain with him for the duration of the hearing. These considerations correspond with the third and fourth factors above. We note too that the divorce proceeding was relatively uncomplicated with many issues agreed upon, the matter needed to be resolved with finality, and it was not practical to wait for Frederick to be released. These considerations correspond with the fifth, sixth, and seventh factors above. In addition, we are unconvinced that it was necessary for Frederick to be present when counsel appeared on his behalf, called and examined witnesses, introduced exhibits and effectively represented his interests. Based on our review of the record, we see little likelihood that the outcome would have been different if Frederick had appeared in person. These considerations correspond with the eighth and ninth factors above. In short, we cannot say the trial court abused its discretion in denying Frederick's request to appear in person.

**{¶ 10}** We also recognized in *Creager*, however, that "[w]hen prisoners are involved in civil actions in courts and the court does not find it appropriate to transport the prisoner to the courthouse, a trial court should consider innovative, alternative ways for the prisoner to participate in the action, such as telephone conference calls[.]" *Creager* at

¶ 24. In *Creager*, we found that the trial court had abused its discretion by failing even to consider the defendant's request to participate via a telephone conference call. *Id.*

{¶ 11} Unlike *Creager*, the trial court here did consider Frederick's request to participate in the divorce hearing via video conferencing. With regard to the first day of the hearing, the trial court noted that Frederick had filed his motion just one day before the hearing and that video conferencing was not available, a fact acknowledged by Frederick's counsel. With regard to the second day, Frederick asked the trial court to allow him to participate in the 2:00 p.m. hearing either in person or, again, through video conferencing. In denying the request to participate through video conferencing, the trial court noted that "the room used for video conferencing closes at 2:30 p.m." In light of the fact that the video-conferencing room was unavailable on either day during the scheduled hearing time, we cannot say the trial court abused its discretion in overruling Frederick's request to participate that way. The trial court was not obligated to reschedule the divorce hearing to accommodate Frederick's limitations at prison. At a minimum, the trial court did not abuse its discretion in failing to do so. Accordingly, the first assignment of error is overruled.

{¶ 12} In his second assignment of error, Frederick contends the trial court erred in not awarding him spousal support. Frederick notes that Gail has earned $90,000 to $100,000 annually for several years. On the other hand, Frederick cites evidence that his tree-cutting business never made a profit. He also notes that he is unemployed due to his incarceration. He further argues that his violation of a protection order covering Gail did not preclude an award of spousal support for him.

{¶ 13} With regard to his ability to work following his incarceration, Frederick cites

evidence that some of his tree-cutting equipment had been lost or stolen, including a stump grinder, saws, and other items. Frederick argues that he will need money to restart his business and begin advertising it again. Although he was unable to testify at the hearing, Frederick also argues on appeal that his earning capacity was limited due to staying home and acting as a caregiver for Gail's grandmother. He also asserts that he experienced some unspecified "head trauma" that will limit his future earning capacity. Finally, Frederick argues that he devoted much time to upkeep on the farm where he and Gail lived. For these reasons, he contends the trial court should have awarded him spousal support of at least $750 per month for five years while reserving jurisdiction to modify the amount and duration.

{¶ 14} In its divorce decree, the trial court properly considered the statutory factors in R.C. 3105.18(C) governing spousal-support awards. In so doing, the trial court made the following findings regarding some of the factors:

-This is a 14-year marriage.

-The parties will be dividing the marital portion of Plaintiff Gail Stokes's pension.

-Both parties have good earning ability.

-Plaintiff Gail Stokes is a Senior Director of Business Development for Ohio Hospice.

-Defendant Fred Stokes owned his own tree service business.

-The parties have little in the way of assets or liabilities.

-Neither party sacrificed for the earning ability of the other.

-The income of the parties is as stated in the Stipulated Exhibits.

-The parties are very similar in their age, physical, mental, and emotional condition, although there is a concern with Defendant's mental health and possibly a substance abuse issue.

-Plaintiff Gail Stokes is now solely responsible for the parties' minor child— financially and otherwise.

-Upon Defendant Fred Stokes's release from incarceration, he could easily restart his tree service business, and Gail Stokes remains employed as stated.

-Neither party lost income production due to marital responsibilities.

-Defendant Fred Stokes's actions against Plaintiff Gail Stokes are the cause of his incarceration and his current inability to earn income.

(March 9, 2020 Judgment Entry and Decree of Divorce at 5.)

{¶ 15} Elsewhere in its divorce decree, the trial court further found:

-Defendant Fred Stokes is currently incarcerated until April 25, 2021, for offenses of Violating a Protection Order and Trespass in a Habitation; the Plaintiff was the victim of each offense.

-Defendant Fred Stokes was also convicted prior to the above offenses for two (2) Protection Order Violations and an offense of Domestic Violence; the Plaintiff was also the victim of these offenses.

-Defendant Fred Stokes's "work" on the property located at 65 Cambrian Road, Cable, Ohio did not add any value to the property, and, in fact, may have actually decreased its value.

(*Id.* at 4.)

**{¶ 16}** After reviewing the applicable statutory factors, the trial court found that Frederick was not entitled to spousal support. It also declined to retain jurisdiction over the issue. We review the trial court's decision for an abuse of discretion. *Hornbeck v. Hornbeck*, 2d Dist. 2019-Ohio-2035, 136 N.E.3d 966, ¶ 87. An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary, or unconscionable. *Ford v. Ford*, 2d Dist. Montgomery No. 28358, 2019-Ohio-3920, ¶ 11.

**{¶ 17}** Upon review, we see no abuse of discretion in the trial court's refusal to award Frederick spousal support while he was in prison. The crucial issue when considering spousal support is whether an award is "reasonable and appropriate." *Morgan v. Morgan*, 2d Dist. Montgomery No. 27164, 2017-Ohio-402, ¶ 47. Need and ability to pay are important considerations when determining whether spousal support is reasonable and appropriate. *Id.* In fact, we have recognized that virtually all of the considerations in R.C. 3105.18(C) relate in some way to the obligee's need and the obligor's ability to pay. *Shehata v. Shehata*, 2d Dist. Montgomery No. 20612, 2005-Ohio-3659, ¶ 34. Here the trial court reasonably could have concluded, based on all of the factors set forth in R.C. 3105.18(C), that requiring Gail to pay Frederick spousal support while he was in prison for domestic-violence-related offenses against her was neither reasonable nor appropriate. Such a conclusion certainly was not an abuse of discretion.

**{¶ 18}** We also see no abuse of discretion in the trial court's failure to find Frederick entitled to spousal support following his release from prison. Although the tree-service business Frederick operated prior to his incarceration showed a paper loss, Gail testified that he did a poor job keeping the books and keeping track of his money. (Hearing Tr. at 76.) Gail explained Frederick had hired a "crew" of workers to help him and that he

frequently was paid in cash, which he spent as quickly as he made it. She also testified that there still were work trucks, chainsaws, and equipment at her house. (*Id.* at 55-56, 76-77.) Frederick also spent his money feeding a gambling addiction that included the use of "bookies," online gambling, and trips to a casino. (*Id.* at 57.) According to Frederick's friend Michael Long, who worked with him, the tree-service business was "built up" and "going pretty good" prior to Frederick going to prison. (*Id.* at 129.)

{¶ 19} Although some of Frederick's business equipment was lost or stolen after his incarceration, he still had chainsaws, a leaf blower, vehicles, tool boxes, and other items. (*Id.* at 76-77, 129.) Even if Frederick were required to spend some time and money purchasing equipment and rebuilding his tree-service business, the trial court reasonably could have determined that for the time necessary to re-establish his business after his release from prison he should not be rewarded with spousal support to make up for any diminished income caused by his own criminal activities against Gail. Furthermore, the failure to award spousal support was offset, in part, by the lack of child support from Frederick. At a minimum, the denial of spousal support or a reservation thereof was not an abuse of discretion. Accordingly, the trial court did not err in failing to award Frederick spousal support following his release from prison or in failing to reserve jurisdiction over the issue. The second assignment of error is overruled.

{¶ 20} In his third assignment of error, Frederick challenges the trial court's property division and its decision not to allow him to keep his property at the marital residence until after his release from prison.

{¶ 21} With regard to the division of property, Frederick contends the trial court acted inequitably by awarding Gail "all of the disputed property." The only specific item

he addresses, however, is a dog named "Lou." Frederick asserts that he purchased "Lou" and raised it from a puppy. As for storing his property at the marital residence until his release from prison, Frederick claims refusing to allow him to do so placed his property "at an unnecessary risk of destruction or theft."

{¶ 22} Upon review, we find Frederick's arguments to be unpersuasive. The record reflects that the parties agreed upon the division of almost all of their personal property. By agreement, Frederick got the items on one list while Gail got the items on another list. The only disputed items were the dog "Lou," a bed and nightstand, a rocker, an antique ladder, a butcher block, and a television stand. The trial court awarded Gail the dog based on a factual finding that it had been purchased for the parties' minor child of whom Gail had legal custody. With regard to the other few items, the trial court awarded them to Gail because Frederick already had been awarded so many more items than her. We see no abuse of discretion in this aspect of the trial court's decision. Because Frederick had retained most of the personal property by agreement of the parties, the trial court reasonably found it equitable to award Gail the few disputed items. The record also contains testimony supporting the trial court's factual determination that the dog had been purchased for the parties' minor child. (Hearing Tr. at 58-59, 80.) Therefore, the trial court did not abuse its discretion in allowing it to stay with Gail and the child.

{¶ 23} Finally, the trial court did not abuse its discretion in refusing to allow Frederick to keep his personal property at the marital residence until his release from prison. The trial court reasonably granted him 30 days to make arrangements to have his property picked up and removed. The trial court was not required to order Gail to preserve Frederick's belongings and to store them at her home while he completed his prison term.

This is particularly true given that Frederick's domestic-violence-related acts against Gail were the cause of his incarceration, and the divorce decree was intended to sever the relationship between the parties. Requiring Gail to store Frederick's belongings until he could retrieve them following his release from prison would have undermined that objective. Accordingly, the third assignment of error is overruled.

{¶ 24} The judgment of the Champaign County Common Pleas Court, Domestic Relations Division, is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and WELBAUM, J., concur.


Copies sent to:

Addie J. King
Fredrick Stokes
Hon. Lori L. Reisinger